# In the United States Court of Appeals for the Federal Circuit

COMMONWEALTH OF VIRGINIA, THE VETERANS OF FOREIGN WARS OF THE UNITED STATES, IRAQ AND AFGHANISTAN VETERANS OF AMERICA, JAMES R. RUDISILL, KASSIDY A. PERKINS, PAUL H. YOON, ELIZABETH F. YOON, TOBY DORAN, KENNETH BRATLAND, MCKENNA BRATLAND,

Petitioners,

*v.*

SECRETARY OF VETERANS AFFAIRS,

Respondent,

Petition for Review pursuant to 38 U.S.C. Section 502

## PETITIONERS' PRINCIPAL BRIEF

MARY GRACE METCALFE
TROUTMAN PEPPER LOCKE LLP
875 THIRD AVENUE,
NEW YORK, NEW YORK 10022
(212) 704-6029

TIMOTHY L. MCHUGH
JEFF P. JOHNSON
MCKAYLA J. RITER
1001 HAXALL POINT
RICHMOND, VIRGINIA 23219
(804) 697-1365
(804) 697-1480
(804) 697-1486

LUKE A. SCHAMEL
YETTER COLEMAN LLP
811 MAIN STREET, SUITE 4100
HOUSTON, TEXAS 77002
(713) 632-8000

*Counsel for the Veterans of Foreign Wars of the United States*

MISHA TSEYTLIN
111 SOUTH WACKER DRIVE
SUITE 4100
CHICAGO, ILLINOIS 60606
(312) 759-5947

*Counsel for James Rudisill, Kassidy
Perkins, Paul Yoon, Elizabeth Yoon, Toby
Doran, Kenneth Bratland, and McKenna
Bratland*

March 5, 2026

JAY JONES
    *Attorney General*

TILLMAN BRECKENRIDGE
 *Solicitor General*

ETHAN P. FALLON
MIKAELA AUSTIN PHILLIPS
Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 371-0200 – Facsimile

*Counsel for the Commonwealth of Virginia*

TODD C. TORAL
JENNER & BLOCK LLP
2029 CENTURY PARK EAST
SUITE 1450
LOS ANGELES, CALIFORNIA 90067-2901
(213) 239-2294

STEVEN J. ARANGO
1099 NEW YORK AVENUE, NW
SUITE 900
WASHINGTON, DC 20001-4412
(202) 637-6348

*Counsel for Iraq and Afghanistan
Veterans of America*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

**Case Number** 25-2033

**Short Case Caption** Commonwealth of Virginia v. Secretary of Veterans Affairs

**Filing Party/Entity** Commonwealth of Virginia

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 03/05/2026

Signature: /s/ Tillman J. Breckenridge

Name: Tillman J. Breckenridge

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Commonwealth of Virginia | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable          ☐ Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below)    ☐ No    ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable          ☐ Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

|  |  |
|---|---|
| **Case Number** | 25-2033 |
| **Short Case Caption** | Commonwealth of Virginia et al. v. Collins |
| **Filing Party/Entity** | Iraq and Afghanistan Veterans of America |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 03/04/2026

Signature: /s/ Todd C. Toral

Name: Todd C. Toral

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☐ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Iraq and Afghanistan Veterans of America (IAVA) | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

**Case Number**  25-2033

**Short Case Caption**  Commonwealth of Virginia v Secretary of Veterans Affairs

**Filing Party/Entity**  Petitioner / The Veterans of Foreign Wars of the United States

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 03/05/2026

Signature:  /s/Luke A. Schamel

Name:  Luke A. Schamel

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☑ None/Not Applicable |
| The Veterans of Foreign Wars of the United States | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☑    None/Not Applicable          ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑   Yes (file separate notice; see below)    ☐   No    ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable          ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 25-2033

**Short Case Caption** Commonwealth of Virginia et al. v. Collins

**Filing Party/Entity** James Rudisill, Kassidy Perkins, Paul Yoon, Elizabeth Yoon, Toby Doran, Kenneth Bratland, and McKenna Bratland

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 03/05/2026

Signature: /s/ Mary Grace W. Metcalfe

Name: Mary Grace W. Metcalfe

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| James Rudisill | | |
| Kassidy Perkins | | |
| Paul Yoon | | |
| Elizabeth Yoon | | |
| Toby Doran | | |
| Kenneth Bratland | | |
| McKenna Bratland | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## Table of Contents

PAGE

Certificate of Interest .................................................................. i

Table of Authorities .................................................................. iii

Statement of Related Cases ......................................................vii

Jurisdictional Statement...........................................................1

Statement of Issues ................................................................ 2

Introduction...........................................................................3

Statement of the Case ........................................................... 4

    I.    Since 2009, the VA has denied veterans their full 48 months of educational entitlements in contravention of the GI Bills and, then, the Supreme Court. ................................................. 4

    II.    The VA's rules harm veterans and their families to the tune of thousands of dollars a month.............................................. 9

    III.    The VA has repeatedly flouted binding precedent by continuing to deny benefits, refusing to process claims affected by *Perkins*, and failing to address unlawful denials. .............................................10

Summary of the Argument....................................................14

Standard of Review ..............................................................17

    I.    The VA's rules governing the granting of benefits under the Montgomery and Post-9/11 GI Bills are interpretations of general applicability. ........................................................18

    II.    The VA's rules are unlawful and should be vacated or set aside........19

        A.    The VA's rules contradict the plain statutory text and binding case law. ................................................. 20

        B.    The VA's rules are arbitrary and capricious...........................29

i

III.    Petitioners each have standing to challenge the VA's unlawful
        rules. ................................................................................................ 44

        A.    The VFW and IAVA are veteran service organizations
              with associational standing. ...................................................... 45

        B.    The Commonwealth of Virginia has standing. ......................... 51

        C.    The individual veteran petitioners have standing. ................... 53

Conclusion ............................................................................................................ 54

Addendum

Certificate of Compliance

Certificate of Service

# Table of Authorities

PAGE(S)

**Cases:**

*Action on Smoking & Health v. C.A.B.*,
   699 F.2d 1209 (D.C. Cir.),
   *supplemented*, 713 F.2d 795 (D.C. Cir. 1983) ................................ 31

*Biden v. Nebraska*,
   600 U.S. 477 (2023) ...................................................................52

*BO v. Wilkie*,
   31 Vet. App. 321 (2019) ...................................................... 6, 7, 32

*BO v. Wilkie*,
   No. 16-4134, 2020 WL 62631 (Vet. App. Jan. 7, 2020) ..................32

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
   401 U.S. 402 (1971) ...................................................................35

*Dep't of Com. v. New York*,
   588 U.S. 752 (2019) ...................................................................52

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
   591 U.S. 1 (2020) ................................................................ 30, 31

*Diamond Alternative Energy, LLC v. EPA*,
   606 U.S. 100 (2025)............................................................ 44, 54

*FDA v. Wages & White Lion Invs., LLC*,
   604 U.S. 542 (2025)...................................................................29

*Grit Energy Sols., LLC v. Oren Techs., LLC*,
   957 F.3d 1309 (Fed. Cir. 2020)....................................................33

*Henderson ex rel. Henderson v. Shinseki*,
   562 U.S. 428 (2011) ...................................................................25

*Hunt v. Wash. State Apple Advert. Comm'n*,
   432 U.S. 333 (1977) .............................................................45, 50

*International Ladies' Garment Workers' Union v. Donovan*,
   722 F.2d 795 (D.C. Cir. 1983) .....................................................31

*King v. St. Vincent's Hosp.*,
    502 U.S. 215 (1991) ...........................................................25

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ...........................................................45

*Massachusetts v. EPA*,
    549 U.S. 497 (2007) ...........................................................45

*Motor Vehicle Mfrs. Ass'n v. State Farm Auto. Ins. Co.*,
    463 U.S. 29 (1983) ................................................ *passim*

*Muwekma Ohlone Tribe v. Salazar*,
    708 F.3d 209 (D.C. Cir. 2013) ......................................... 42

*Nat'l Org. of Veterans' Advocs., Inc. v. Sec'y of Veterans Affs.*,
    981 F.3d 1360 (Fed. Cir. 2020) .................................... *passim*

*Nazareth Hosp. v. Sec'y U.S. Dep't of Health & Hum. Servs.*,
    747 F.3d 172 (3d Cir. 2014) ............................................ 42

*Paralyzed Veterans of Am. v. Sec'y of Veterans*,
    345 F.3d 1334 (Fed. Cir. 2003) ....................................... 17

*Perkins v. Collins*,
    38 Vet. App. 304 (2025) ................................................ *passim*

*Pers. Web Techs., LLC v. Apple, Inc.*,
    848 F.3d 987 (Fed. Cir. 2017) ........................................34

*Phigenix, Inc. v. Immunogen, Inc.*,
    845 F.3d 1168 (Fed. Cir. 2017) .................................. 44, 53

*Rudisill v. McDonough*,
    601 U.S. 294 (2024) .................................................... *passim*

*Tobler v. Derwinski*,
    2 Vet. App. 8 (1991) ..............................................6, 13, 32

*United States v. Turkette*,
    452 U.S. 576 (1981) ...........................................................26

*Uzuegbunam v. Preczewski*,
    592 U.S. 279 (2021) .................................................. 53, 54

*Veterans Advoc. Inc. v. Sec'y of Veterans Affs.*,
    7 F.4th 1110 (Fed. Cir. 2021) ........................................................ 45

*Yoon v. Collins*,
    No. 25-1839, 2025 WL 1765453 (Fed. Cir. June 26, 2025) ............... 1, 34, 36

## Statutes and Other Authorities:

5 U.S.C. § 552(a)(1)(D) ................................................................ 1, 15, 18

5 U.S.C. § 706 ..................................................................................... 36

5 U.S.C. § 706(2) .......................................................................... 17, 27

5 U.S.C. § 706(2)(A) .......................................................................... 29

38 U.S.C. § 502 ......................................................................... *passim*

38 U.S.C. § 503 ................................................................................... 35

38 U.S.C. § 503(a) ............................................................................. 36

38 U.S.C. § 503(b) ............................................................................. 36

38 U.S.C. § 552(a)(1) ................................................................ 1, 18, 19

38 U.S.C. § 3001 ................................................................................... 4

38 U.S.C. § 3011(a) ..................................................................... 21, 22

38 U.S.C. § 3013(a) ............................................................................. 5

38 U.S.C. § 3013(a)(1) ............................................................... 21, 22

38 U.S.C. § 3014(a) ........................................................................... 22

38 U.S.C. § 3031(i)(2)(B) ............................................................... 40

38 U.S.C. § 3033(a) ............................................................................. 5

38 U.S.C. § 3301 ................................................................................... 4

38 U.S.C. § 3311(a) ........................................................................... 22

38 U.S.C. § 3311(b) ........................................................................... 21

38 U.S.C. § 3312(a) ............................................................................. 5

38 U.S.C. § 3319(h)(2)(B) ............................................................... 41

38 U.S.C. § 3319(h)(7) ........................................................... 40

38 U.S.C. § 3321 ................................................................... 40

38 U.S.C. § 3322 ................................................21, 25, 26, 28

38 U.S.C. § 3322(a) ............................................................ 5, 21

38 U.S.C. § 3322(h) ........................................................... *passim*

38 U.S.C. § 3322(h)(1) ....................................................... *passim*

38 U.S.C. § 3695(a) .................................................................21

38 U.S.C. § 7261(a) .................................................................36

*About Us*, Veterans of Foreign Wars ...................................... 48

Appellee's Unopposed Mot. for Leave, *Rudisill v. Collins*, Vet. App. 16-4134,
(Feb. 27, 2026) ...................................................................7

*Arbitrary*, *Black's Law Dictionary* (12th ed. 2024) ................30

*Bureaucratic Barriers: Making VBA Education Services Work For Veterans
And Not The Bureaucracy: Hearing Before the Subcomm. On Econ.
Opportunity of H. Comm. On Veteran Affs.*, 119th Cong. 7 (2025) ................33

*Montgomery GI Bill Active Duty (Chapter 30) rates*,
U.S. DEP'T OF VETERANS AFFS. ....................................... 9

*Post-9/11 GI Bill (Chapter 33)*, U.S. DEP'T OF VETERANS AFFS. ............................. 24

*Post-9/11 GI Bill (Chapter 33) rates*, U.S. DEP'T OF VETERANS AFFS. ...................... 9

Pub. L. No. 110-252, title V, 122 Stat. 2357 .................... 4, 43

Resp't's Mot. to Dismiss, *Yoon v. Collins*, No. 2025-1839
(Fed. Cir. June 13, 2025), ECF No. 26 ...................................36

*VA expands access to GI Bill benefits for Veterans who served multiple periods
of service*, U.S. DEP'T OF VETERANS AFFS. (Jan. 3, 2025) ........................32-33

VA. DEP'T OF VETERANS SERVS., COMMISSIONER'S 2024 ANNUAL REPORT
(2024) ...............................................................................51

VA. DEP'T OF VETERANS SERVS., COMMISSIONER'S 2025 ANNUAL REPORT
(2025) ........................................................................ 51, 52

## Statement of Related Cases

Pursuant to Federal Circuit Rule 47.5, petitioners note that this case has not previously been before this Court and that the following cases are related to this appeal as they involve whether the United States Department of Veterans Affairs ("VA") has wrongfully denied benefits to certain petitioners here:

1) *Perkins v. Collins*, No. 25-2003 (Fed. Cir.)

2) *Rudisill v. Collins*, No. 25-2578 (Vet. App.)

3) *Yoon v. Collins*, No. 25-255 (Vet. App.)

4) *Yoon v. Collins*, No. 25-8926 (Vet. App.)

5) *Doran v. Collins*, No. 25-8928 (Vet. App.)

# JURISDICTIONAL STATEMENT

This Court has jurisdiction under 38 U.S.C. § 502. Section 502 vests this Court with jurisdiction to review VA actions "to which section 552(a)(1) . . . of title 5 . . . refers." 38 U.S.C. § 502. Among other actions, § 552(a)(1) refers to "interpretations of general applicability formulated and adopted by the agency." 5 U.S.C. § 552(a)(1)(D). This Court has held that a VA manual's instructions may be reviewed as "interpretations of general applicability" under § 552(a)(1). *Nat'l Org. of Veterans' Advocs., Inc. v. Sec'y of Veterans Affs.*, 981 F.3d 1360, 1375–76 (Fed. Cir. 2020) (en banc) ("*NOVA*").

Here, the rules in the VA's benefits administration manual—the Veterans Benefits Administration Manual M22-4—are rules of general applicability under which the VA has wrongfully denied veterans' educational entitlements. *See, e.g., Perkins v. Collins*, 38 Vet. App. 304, 315 (2025) (overturning VA's denial of benefits under its rules); *Yoon v. Collins*, No. 25-1839, 2025 WL 1765453, at *1 (Fed. Cir. June 26, 2025) (explaining that the VA denied benefits under its rules); *see also infra* Secs.I, III. Thus, this Court has jurisdiction to review the VA's rules.

## STATEMENT OF ISSUES

1.      Whether the VA's rules are unlawful and should be vacated or set aside because they require veterans whose service is long enough to qualify for benefits under both the Montgomery and Post-9/11 GI Bills—without counting any time in service twice—to nevertheless have a break in service to be eligible for the full 48 months of combined educational entitlements allowed under the GI Bills.

2.      Whether the VA's rules are arbitrary and capricious for failing to even consider whether to allow for the retroactive reimbursement of wrongfully denied benefits under the GI Bills.

3.      Whether the VA's rules are arbitrary and capricious for extending the delimiting date for veterans and their spouses but not for their children even though all are using the same benefits and dependents are supposed to be treated the same as the veteran from whom their benefits are transferred.

4.      Whether the VA's rules are arbitrary and capricious for treating veterans differently regarding whether they can switch from using one benefit program to another based only on whether their service began before or after a statutory subsection's effective date.

# Introduction

This case centers on two simple questions: Do veterans who served longer get fewer benefits? And when the VA wrongfully denies benefits, should it leave veterans holding the bag? The answer to both is obvious to everyone but the VA—of course not.

Veterans who serve long enough to qualify for benefits under the Montgomery GI Bill and the Post-9/11 GI Bill—without double-counting any time in service—are entitled to full benefits under both. This is subject only to requirements that they not receive such benefits concurrently or exceed the 48-month aggregate-benefits cap. But for years, the VA has denied veterans their rightfully earned educational entitlements under a cramped reading of these GI Bills. Two years ago, the Supreme Court corrected that error in *Rudisill v. McDonough*, 601 U.S. 294 (2024), holding that, under the plain language of the statutes, "[v]eterans who separately accrue benefits under both [GI Bills] are entitled to both benefits." *Id.* at 314. The Court explained that it was that veteran's "lengthy service"—not his "periods of service"—that "conferred two separate entitlements" on him. *Id.* at 306. If the first question needed asking, *Rudisill* answered it clearly.

But rather than follow *Rudisill*'s clear direction, the VA invented new reasons to deny veterans their educational entitlements, now through an unduly cramped

reading of *Rudisill* itself. The VA imposed rules that, among other things, create a break-in-service requirement for veterans to obtain benefits under both GI Bills. That is, the VA's position is that a veteran needs a distinct "period of service"— separated by a break—to establish eligibility under each benefit program. This contrived requirement has no basis in the U.S. Code, *Rudisill*, or common sense.

Worse still, the VA's rules arbitrarily fail to allow reimbursement of wrongfully denied benefits or to extend the deadline for using such benefits to all dependents—including benefits unlawfully denied in violation of binding Veterans Court precedents. This leaves veterans holding the bag for the VA's mistakes. These rules and their atextual requirements harm veterans and their families and break the promises made to them in exchange for their service and sacrifices. The rules should therefore be vacated or set aside.

## STATEMENT OF THE CASE

I. SINCE 2009, THE VA HAS DENIED VETERANS THEIR FULL 48 MONTHS OF EDUCATIONAL ENTITLEMENTS IN CONTRAVENTION OF THE GI BILLS AND, THEN, THE SUPREME COURT.

Veterans who served after September 11, 2001, and meet the statutory requirements receive 36 months of education benefits under the Montgomery GI Bill, *see* 38 U.S.C. § 3001 *et seq.*, and 36 months of education benefits under the Post-9/11 Veterans Educational Assistance Act of 2008, Pub. L. No. 110-252, title V, 122 Stat. 2357, 38 U.S.C. § 3301 *et seq.*, by virtue of their lengthy service. The GI Bills

carefully prohibit double dipping—a veteran "may not receive assistance under two or more such programs concurrently," 38 U.S.C. §§ 3033(a), 3322(a)—and double counting—a veteran "shall elect . . . under which authority such service is to be credited," *id.* § 3322(h)(1). But outside those limitations, veterans entitled to benefits under both GI Bills may combine benefits from those programs up to a 48-month aggregate cap. *See id.* §§ 3013(a), 3312(a), 3695.

Since the effective date of the Post-9/11 GI Bill on August 1, 2009, the VA has interpreted that bill to require veterans and their family members who used benefits under one bill to *exhaust or forfeit* their benefits under the other bill. This effectively limited most veterans to a total of 36 months of benefits.

In 2024, after years of litigation, the Supreme Court rejected the VA's benefits-reducing interpretation. It held that a veteran whose length of service qualifies him for entitlements under both GI Bills is "separately entitled to each of [the] two educational benefits" and "may use his benefits, in any order, up to [the] 48-month aggregate-benefits cap." *Rudisill*, 601 U.S. at 306, 314. Moreover, the Supreme Court explained that "no statutory constraint prevents [a veteran] from accessing his benefits, up to 48 months, in whichever order he chooses," and thus "absent specified limits, the VA is statutorily obligated to pay him 48 months of benefits." *Id.* at 306. The Supreme Court was explicit: the education benefits

"analysis does not focus on [a veteran's] periods of service"; "[r]ather, what matters is that his *lengthy service* conferred two separate entitlements." *Id.* (emphasis added).

While *Rudisill* was being litigated, the VA continued denying claims and tracked those denials.[1] Many of these denials were contrary to binding precedent. On August 18, 2019, the Veterans Court issued a precedential decision that the two GI Bills "allow such a veteran to receive entitlement under both programs subject to a 36-month cap on utilization of each of the two separate programs and a 48-month cap overall." *BO v. Wilkie*, 31 Vet. App. 321, 324 (2019). The VA was immediately obligated to apply this holding to the claims of all other veterans, even as it pursued an appeal. *See Tobler v. Derwinski*, 2 Vet. App. 8, 14 (1991). Instead, the VA now

---

[1] Appx0159-0160 (promulgated Sept. 2019) (new "impacted claims must be placed under control" and "place[d] in a new TIMS queue entitled BVW"); Appx0161-0162 (promulgated Oct. 2019) ("Until a final determination on B.O. v. Wilkie has been issued, claims which fit the criteria . . . should be deferred for decision," claims in which there "a hardship request"—which would require adjudication—should be processed "in accordance with current procedures, notwithstanding B.O. v. Wilkie," and "a supplemental claim" should be processed "as usual"); Appx0163 (promulgated Nov. 2019) (acknowledging that "a stay of the decision's implementation" had been sought but not received, directing that claims affected by *BO* should "be processed under existing . . . claim rules," and instructing that, "[i]n order to continue tracking these specific . . . claims which may be affected by the B.O. v. Wilkie ruling," claims should be marked both "**B.O. V. Wilkie Claim**" and "BVW"). The Court of Appeals for Veterans Claims ("Veterans Court") ruled in favor of Mr. Rudisill (then proceeding under the pseudonym "BO").

admits—in response to a court order—that the "[Veterans] Court's decision in *BO v. Wilkie*, 31 Vet. App. 321 (2019) was not applied by the Veterans Benefit Administration to any of the enumerated claims it adjudicated" during the *Rudisill* litigation—effecting an unlawful stay. Appellee's Unopposed Mot. for Leave, *Rudisill v. Collins*, Vet. App. 16-4134, at 1 n.1 (Feb. 27, 2026). During this unlawful stay, the VA wrongfully denied benefits to hundreds of thousands of veterans and their families, many of whom paid out of pocket for their education or are no longer able to use such benefits.

As of January 2025, the VA estimated that 1,039,010 veterans—all with breaks in service like Mr. Rudisill—may have been denied their full benefits, with 660,329 of those claims having been subject to review after *BO* was decided. Appx0139; Appx0151. All such denials, and all similar denials to continuously serving veterans, were atextual and wrong. But the denials in violation of *BO* were worse.

After the Supreme Court decided *Rudisill*, and without seeking public input, the VA issued new rules in its public claims processing manual, the Veterans Benefits Administration Manual M22-4. *See* Appx0001-0033; Appx0034-0068. These changes to the M22-4 manual are binding on the regional offices that evaluate veterans' claims for education benefits.

But rather than implement *Rudisill*'s command that long-serving veterans may use the entirety of their 48 months of combined benefits, the VA's rules actively prevent it. These noncompliant rules suffer multiple defects.

First, they misinterpret the plain text of § 3322(h)(1) of the Post-9/11 GI Bill—and improperly cabin *Rudisill*—to deny veterans their full benefits unless they have multiple periods of service separated by breaks. Appx0005-0017; Appx0034-0047.

Second, they impose multiple arbitrary conditions on statutory service entitlements. For example, they allow only those veterans whose continuous service began before August 1, 2011, to switch from Montgomery to Post-9/11 benefits and continue to require that many long-serving veterans relinquish benefits under one GI Bill to access benefits under the other—directly contrary to *Rudisill*. Appx0035.

Third, they arbitrarily and capriciously fail to provide a remedy for wrongfully denied benefits, which includes failing to provide for reimbursement and failing to extend the delimiting date for veterans' dependent children who now may otherwise face statutory bars on their use of benefits.

II.   THE VA'S RULES HARM VETERANS AND THEIR FAMILIES TO THE
      TUNE OF THOUSANDS OF DOLLARS A MONTH.

The benefits that veterans and their families are being denied are material and, for many, irreparable. The Montgomery GI Bill generally provides up to $2,518 per month in direct payments. *See Montgomery GI Bill Active Duty (Chapter 30) rates*, U.S. DEP'T OF VETERANS AFFS., https://perma.cc/66J8-77EC (last visited Mar. 3, 2026). The Post-9/11 GI Bill is far more generous, providing up to the full cost of attendance, including a monthly housing allowance. *See Post-9/11 GI Bill (Chapter 33) rates*, U.S. DEP'T OF VETERANS AFFS., https://perma.cc/KVC7-SMCH (last visited Mar. 3, 2026). In practical terms, this means that beneficiaries can receive more than $30,000 per year in tuition benefits alone (paid to their institution), plus more than $3,000 per month in housing benefits (paid to the beneficiary), and a $1,000 book stipend, among other benefits. *See id.*

According to the VA's own figures, its rules have improperly limited Post-9/11 benefits for more than 200,000 people and incorrectly forced some 996,000 others to forfeit their Montgomery benefits to receive Post-9/11 benefits. Appx0126; Appx0136. Dependents who use transferred benefits are similarly affected, but with an added problem: the VA has extended the delimiting date—i.e., the date by which benefits must be used—for veterans and their spouses whose benefits were wrongfully denied, but has arbitrarily failed to extend the date for dependent

children. This means that children may age out of eligibility before the VA's wrongful interpretation of the Post-9/11 GI Bill is corrected. Thus, because of the VA's own knowing error, dependent children may receive *none* of the benefits they are owed.

The VA's denial of these benefits causes real financial harm. Veterans who are denied benefits must find other ways to pay for their educational expenses—including liquidating retirement accounts or taking out loans on which interest accrues—or else delay or forgo their education entirely. The loss in earning power from delaying or halting their pursuit of higher education cannot easily be undone. Once their educations are delayed, many may never restart their academic pursuits. Veterans who use education benefits under both GI Bills are typically older than the average college or graduate student because they served five or more years. These veterans often have families and other obligations—they cannot simply put their lives on hold mid-degree and jump back into the workforce temporarily while the VA fights to deny them their earned benefits.

III. THE VA HAS REPEATEDLY FLOUTED BINDING PRECEDENT BY CONTINUING TO DENY BENEFITS, REFUSING TO PROCESS CLAIMS AFFECTED BY *PERKINS*, AND FAILING TO ADDRESS UNLAWFUL DENIALS.

The VA admitted months ago that its benefits manual did not comply with *Perkins* (or therefore *Rudisill*). In the VA's corrected motion to dismiss and

opposition to motion to stay, it admitted that it was "taking steps to *revise*" the manual's rules to "reflect the precedential decision" in *Perkins* and that it "intends to issue the updated manual provisions and to train adjudicators on the updated provisions by January 31, 2026." Dkt.24-2 at 9. But it was not until February 27, 2026—less than a week before this filing—that the VA apparently implemented any updates to comply with *Perkins*.

In this nine-month interim, the VA did not comply. It did the opposite: it continued to apply its rules to wrongfully deny benefits in contravention of *Perkins*— as it did while appealing *BO*—or altogether refused to review claims affected by *Perkins* while that case and this one proceed on appeal. Neither approach is legally justified. These denials continued even after this case was filed despite the VA's acknowledging that *Perkins* has been binding the whole time. *See, e.g.*, Appx0194-0201 (denied August 14, 2025); Appx0169-0184 (denied October 16, 2025); Appx0185-0193 (denied January 5, 2026). During the VA's inexcusable nine-month delay in even trying to comply with *Perkins*, at least two tuition deadlines have passed, resulting in an untold number of denied claims that should have been granted under *Perkins*.

Moreover, the VA told veterans who served continuously that it was not reviewing requests to re-adjudicate claims under *Rudisill* until the Supreme Court

weighed in. On October 2, 2025—two weeks after opposing petitioners' requested stay by arguing that halting re-adjudications would injure the public—the VA told a veteran that such re-adjudications "are at almost a complete standstill" because the VA is "awaiting further orders and rulings from the Supreme Court," and that "when finally given direction, we [the VA] will work these [applications] in order received." Appx0202; Appx0204. Two months later, the VA told another veteran the same thing: "We are waiting for new processing guidance from the Supreme Court." Appx0185; Appx0190-0191. The VA then added that "you need mulitiple [sic] periods of service to qualify for the additional months of benefits"—despite *Perkins* holding the opposite more than six months earlier. *Id.* And even when instructed by the Board of Veterans' Appeals to apply *Perkins* to a claim on remand, the regional office refused because "the VA does not have any regulations in place for *Perkins v. Collins*." Appx0170; Appx0177-0182. *Perkins* was never stayed, and petitioners are unaware of any case pending before the Supreme Court that could affect the VA's re-adjudication of claims under *Rudisill*.

On February 27, 2026—six months after this suit began—the VA announced publicly that it would begin to apply *Perkins*. *See, e.g.*, Appx0275–0277. An update to the Veterans Benefits Administration Manual M22-4, which was issued without notice-and-comment review, included provisions recognizing "[l]engthy

service which is sufficient in length to establish full entitlement to **both** chapter 30 and chapter 33 without crediting the same day of service to both benefits." Appx0230-0274. The same subchapter, however, noted that "[c]urrently, Perkins procedures should only be applied to priority cases identified by Education Service." Appx0270.

The rules challenged here—including Subchapter 10, Parts B.2, B.3, and B.4—remain unchanged in the manual. Appx0230-0274. The VA has made no change to address the rules' inconsistent treatment of delimiting dates. Nor do the rules provide for any reimbursement of benefits that were improperly denied, including those unlawfully denied for years in violation of *BO* or those unlawfully denied this past year in violation of *Perkins*.

In sum, the VA opposed a stay of its rules by telling this Court that it was working to revise them to comply with *Perkins* and arguing that a stay of its re-adjudications under *Rudisill* would harm the public. Yet the VA dragged its feet in making these revisions while continuing to deny benefits in violation of *Perkins*.

The VA cannot unilaterally refuse to implement binding precedent. The VA concedes that "the precedential effect of the Veterans Court's ruling [in *Perkins*] applies to other cases pending any appeal." Dkt.24-2, at 9 (citing *Tobler*, 2 Vet. App. at 13-14). The VA's resistance to complying with both the GI Bills and binding

precedent is as inexplicable as it is unjustified. The VA's continued misreading of the GI Bills to the detriment of veterans—now through the rules set forth in its manual—and its repeated refusal to follow binding precedent harm veterans and their families and are why petitioners are forced to file this petition.

## Summary of the Argument

The VA's rules denying veterans their full educational entitlements under the Montgomery and Post-9/11 GI Bills are unlawful and should be vacated or set aside. These rules fail for two reasons.

First, the VA's rules contradict both the plain statutory text of the GI Bills and binding precedent. The GI Bills entitle veterans whose length of service qualifies them for benefits under both programs to receive benefits under each, subject only to the 48-month aggregate cap, the bar on concurrent receipt of benefits, and the prohibition against double-counting any day of service. The VA's invented break-in-service requirement—which illogically denies full benefits to many of the Nation's longest-serving veterans simply because they chose to serve continuously—finds no support in the statutes or case law. The Supreme Court in *Rudisill v. McDonough* explicitly held that the relevant inquiry focuses on a veteran's "lengthy service," not on whether that service was divided into separate "periods." The Veterans Court in *Perkins v. Collins* confirmed this interpretation, holding that a veteran with a single

14

continuous period of service long enough to qualify under both GI Bills is entitled to full benefits under both.

Second, even setting aside their textual deficiencies, the VA's rules are arbitrary and capricious. The VA entirely failed to consider reimbursing veterans and their dependents for educational expenses they incurred because their benefits were unlawfully denied. The VA also extended delimiting dates for veterans and their spouses while arbitrarily refusing to provide the same relief to their children, even though children are similarly situated beneficiaries. And the VA irrationally treats otherwise identical veterans differently based solely on whether their service began before or after August 1, 2011—a date that is merely the effective date of 38 U.S.C. § 3322(h) and otherwise has no substantive significance.

Although this should not be in serious doubt, this Court has jurisdiction to review the VA's rules because they are "interpretations of general applicability" within the meaning of 5 U.S.C. § 552(a)(1)(D) and 38 U.S.C. § 502. As this Court held in *NOVA*, VA manual provisions that limit discretion and impact veterans' benefits eligibility for an entire class of veterans constitute reviewable final agency action. The challenged rules here bind regional offices in adjudicating all post-*Rudisill* claims for GI Bill benefits.

Finally, each petitioner has standing to challenge the VA's unlawful rules. The Commonwealth of Virginia, the Veterans of Foreign Wars, and Iraq and Afghanistan Veterans of America have standing to sue on behalf of their affected constituents and members. The individual petitioners—James Rudisill, Kassidy Perkins, Paul and Elizabeth Yoon, Toby Doran, and Kenneth and McKenna Bratland—have standing because they are the direct objects of the VA's challenged rules and have suffered concrete injuries, including pocketbook harm from paying for education expenses that their benefits should have covered.

The VA's rules are unlawful, arbitrary, and capricious. Petitioners therefore seek to have them vacated or set aside so that veterans and their dependents can receive the benefits they were promised but that the VA has long denied to them.

## Standard of Review

This Court reviews petitions under 28 U.S.C. § 502 "in accordance with the standard set by the Administrative Procedures Act," 5 U.S.C. §§ 701–706. *Paralyzed Veterans of Am. v. Sec'y of Veterans Affs.*, 345 F.3d 1334, 1339 (Fed. Cir. 2003). As a result, this Court must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; "contrary to constitutional right, power, privilege, or immunity"; "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right"; "without observance of procedure required by law"; "unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute"; or "unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court." 5 U.S.C. § 706(2); *see Paralyzed Veterans of Am.*, 345 F.3d at 1339–40.

# ARGUMENT

I. THE VA'S RULES GOVERNING THE GRANTING OF BENEFITS UNDER THE MONTGOMERY AND POST-9/11 GI BILLS ARE INTERPRETATIONS OF GENERAL APPLICABILITY.

The VA's rules are "interpretations of general applicability formulated and adopted by the agency." 5 U.S.C. § 552(a)(1)(D); *see also* 38 U.S.C. § 502 (vesting this Court with jurisdiction to review VA actions "to which section 552(a)(1) . . . refers"). This Court has already held that VA claims-processing manuals may be reviewed as "interpretations of general applicability." *NOVA*, 981 F.3d at 1375-76. And petitioners here challenge the rules themselves, not any individual benefits determination.

Generally, a manual provision "is an interpretive rule of general applicability and constitutes reviewable final agency action." *Id.* at 1382. This Court's reasoning in *NOVA* is instructive. There, petitioners challenged portions of a VA claims-processing manual regarding knee-replacement claims. *Id.* at 1365. The VA argued that this Court lacked jurisdiction under § 502, but this Court rejected that argument because the Supreme Court stated "that many [agency] manual instructions surely qualify as guidelines of general applicability" under § 552(a)(1). *Id.* at 1374 (citation omitted). The Court reasoned that § 552(a)(1)'s use of the term "general applicability" is "directed only to . . . whether the rule applies to a class of persons rather than to selected individuals." *Id.* at 1376. Thus, the disability-benefits manual

was "[o]n its face . . . an 'interpretation of general applicability'" because it "limits VA staff discretion, and . . . impacts veteran benefits eligibility for an entire class of veterans." *Id.* at 1374.

*NOVA*'s reasoning applies with equal force here. As with the manual in *NOVA*, the VA's rules here "limit[] VA staff discretion" because they "govern[] all regional office adjudications" of relevant claims. *NOVA*, 981 F.3d at 1374; Pet.21 (alleging that the VA's rules bind regional offices). They do not purport to apply to "named persons or organizations"; instead, they apply generally to all claimants for GI Bill benefits. *See generally* Appx0001-0068. Nor are they merely restatements of existing law—they conflict with it. If they simply "restate[d]" the Supreme Court's decision in *Rudisill*, the VA would have no need to "revise" those sections to "implement[] *Perkins*." Dkt.24-2 at 9.

Thus, as with the *NOVA* benefits manual, the VA's rules here are exactly the types of "interpretations of general applicability" that Congress "plainly intended" by § 552(a)(1), so this Court has jurisdiction to review them. *NOVA*, 981 F.3d at 1375.

## II. THE VA'S RULES ARE UNLAWFUL AND SHOULD BE VACATED OR SET ASIDE.

The VA's rules are unlawful for two independent reasons. First, they contradict the plain statutory text of the GI Bills and binding precedent from both the Supreme Court and the Veterans Court. Second, even if the rules were not

textually foreclosed and contrary to case law, they are arbitrary and capricious. The VA's unlawful rules should therefore be vacated or set aside.

## A. The VA's rules contradict the plain statutory text and binding case law.

Veterans whose length of service entitles them to education benefits under the Montgomery and Post-9/11 GI Bills may use both benefits, in any order, up to the 48-month statutory cap. But the VA is unlawfully denying veterans their full, rightfully earned education entitlements by applying a cramped reading of the GI Bills and the Supreme Court's *Rudisill* decision. Under the VA's rules, veterans are entitled to their full 48 months of benefits under both GI Bills only if they have distinct periods of qualifying service, separated by a break. Appx0035. This break-in-service requirement has no basis in the statutory text or *Rudisill*.

### 1. The VA's rules invent an atextual break-in-service requirement that unlawfully denies benefits to veterans who served continuously.

The VA's rules unlawfully deny benefits to veterans who served their country continuously, nonsensically denying benefits to many of the Nation's longest-serving veterans. These rules and their invented requirements are incompatible with the GI Bills' plain text.

Veterans who first enter active duty between 1985 and 2030 and who serve long enough—usually two or three years—are entitled to 36 months of benefits

under the Montgomery GI Bill. 38 U.S.C. §§ 3011(a), 3013(a)(1). Veterans who enter active duty on or after September 11, 2001, and who serve for three years are entitled to 36 months of benefits under the Post-9/11 GI Bill. *Id.* § 3311(b). Because these two bills cover overlapping periods, veterans who are entitled to the full 36 months of Post-9/11 benefits are also entitled to 36 months of Montgomery benefits. Section 3695(a) limits the "aggregate period for which any person may receive assistance under two or more [GI Bills]" to 48 months. *Id.* § 3695(a). And § 3322 bars "duplication" of benefits: a person entitled to both Montgomery and Post-9/11 benefits "may not receive assistance under two or more such programs *concurrently*, but shall elect . . . under which chapter or provisions to receive educational assistance." *Id.* § 3322(a) (emphasis added). Nor may they double-count any day of "qualifying service" toward both benefits—they must elect "under which [GI Bill] such service is to be credited." *Id.* § 3322(h)(1).

Thus, under the plain text of the GI Bills, veterans with sufficiently lengthy service are entitled to benefits under both programs but may not (1) exceed the 48-month aggregate cap, (2) receive benefits under both programs concurrently, or (3) establish eligibility under these programs by double-counting any day in service. "Outside of those limitations, their service 'entitle[s]' them to the benefits that they

have earned, and the VA 'shall pay' them these benefits." *Rudisill*, 601 U.S. at 302 (citing 38 U.S.C. §§ 3011(a), 3014(a), 3311(a), 3313(a)) (alterations in original).

The VA, however, interprets the GI Bills as imposing a break-in-service requirement. They do not.

Section 3.10 of the VA's rules requires veterans eligible for benefits under both GI Bills to make a "Period of Service (POS) Election," which is "an election to point a period of service to one benefit instead of another." Appx0001. These rules state that "[o]nce a period of service has been applied toward a specific benefit, that period of service may not be used again to establish eligibility for another benefit," though a "period of service beginning before August 1, 2011, may be used to establish eligibility under more than one benefit." *Id*. The rules clarify that "a single qualifying period of active duty which began on or after August 1, 2011, can establish eligibility under chapter 30 [the Montgomery GI Bill] *or* chapter 33 [the Post-9/11 GI Bill] based on that period, but not both." Appx0006. The VA repeats these conditions in standardized letters and attachments that warn veterans that "no service that began on or after August 1, 2011, can be used to establish both" benefits, and that a veteran "may be barred from using both benefits" absent an additional service period. Appx0023-0024; Appx0028-0029.

But even when the VA allows a veteran to use a single, continuous period of service to establish eligibility under both GI Bills, it allows switching only from Montgomery to Post-9/11 benefits—not vice versa—and nevertheless caps benefits at 36 months. That is, veterans may elect to swap Montgomery for Post-9/11 benefits, but only for their remaining amount of Montgomery benefits. The VA's website lays out its interpretation:

## If you've completed 1 qualifying period of active duty

+ EXPAND ALL    − COLLAPSE ALL

**For a period of active duty that started on or after August 1, 2011**    −

You can use only 1 education benefit. You'll have to choose which education benefit you'd like to use. Once you make that choice, you give up the right to use the other benefit. You can use up to a maximum of 36 months of education benefits.

If you choose to use the Post-9/11 GI Bill, you can't switch at a later date to use one of these other education benefits instead:

- Montgomery GI Bill Active Duty (MGIB-AD or Chapter 30)
- Montgomery GI Bill Selected Reserve (MGIB-SR or Chapter 1606)

**Note:** It's also true that if you choose to use MGIB-AD or MGIB-SR, you can't switch at a later date to use Post-9/11 Bill benefits.

If you decide to use Post-9/11 GI Bill benefits and you use up all your entitlement for that benefit, we'll refund you part or all of the payments you made into MGIB-AD. The maximum amount you can get for a refund is $1,200.
Learn more about Montgomery GI Bill refunds

> **If you've completed 1 qualifying period of active duty**
>
> **+ EXPAND ALL    − COLLAPSE ALL**
>
> For a period of active duty that started on or after August 1, 2011    **+**
>
> For a period of active duty that started before August 1, 2011    **−**
>
> You can use MGIB-AD or MGIB-SR benefits and then switch to use Post-9/11 GI Bill benefits.
>
> **This is how your decision to switch affects your benefits:**
>
> - You give up the right to use your MGIB-AD or MGIB-SR benefits, **and**
> - If you switch from using MGIB-AD to using Post-9/11 GI Bill benefits, you can use only your remaining entitlement from MGIB-AD when you start using Post-9/11 GI Bill benefits.
>
> **Example:** If you have 6 months of MGIB-AD entitlement left when you switch, you'll have 6 months of Post-9/11 GI Bill benefits to use.
>
> You can't switch from using Post-9/11 GI Bill benefits to using MGIB-AD or MGIB-SR. This is because when you choose to use Post-9/11 GI Bill benefits, you give up your right to use MGIB-AD and MGIB-SR.

*Post-9/11 GI Bill (Chapter 33)*, U.S. Dep't of Veterans Affs., https://perma.cc/X3DZ-JNYF (last visited Feb. 28, 2026).

These rules conflict with the plain statutory text for two reasons. First, the VA's treating veterans differently based on whether their service began before or after August 1, 2011, has no statutory basis. That date is merely subsection (h)'s effective date; it is not otherwise mentioned in the statute. Nothing in the Post-9/11

or Montgomery GI Bills even hints that the effective date controls whether a veteran may switch from one benefit to another.

Second, the VA stretches § 3322(h)(1)'s bar against double-counting "qualifying service" from a bar against double-counting any time in service to a bar against double-counting any single stretch of continuous service—no matter how lengthy. The VA reasons that a single stretch of continuous service, whether for three or thirty years, is but one "period of service" and therefore can establish eligibility under only one program. That reading strains credulity. To be sure, § 3322(h)'s title is "Bar to duplication of eligibility based on a single event or period of service." But nothing in § 3322 or any other section suggests that *period of service* here means the entirety of a continuous stretch of service versus a discrete period of days within one's service. And even if this term were ambiguous, ties go to the veterans "under the canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor." *King v. St. Vincent's Hosp.*, 502 U.S. 215, 220 n.9 (1991); *see also Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 441 (2011) (noting that the Supreme Court has "long applied the canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor") (citation omitted); *Rudisill*, 601 U.S. at 314 ("If the statute were ambiguous, the pro-veteran canon would favor Rudisill . . . ."). The

VA's interpretation of *period of service* in § 3322(h)'s title therefore fails to construe this benefits-granting statute in the beneficiaries' favor. Even if the statute were ambiguous, such an anti-veteran reading of a pro-veteran law should be rejected.

In any event, § 3322(h)'s text speaks not of *periods* of service but of "*qualifying* service." 38 U.S.C. § 3322(h)(1) (emphasis added). What is *qualifying* about a veteran's service is its length—two or three years for Montgomery benefits and three years for Post-9/11 benefits. So a veteran with 30 continuous years will have multiple, non-overlapping stretches of "qualifying service" to obtain entitlements under each GI Bill without double-counting any day of qualifying service. That is the straightforward and common-sense reading of these benefits-granting statutes.

The VA's contrary interpretation ignores this common-sense reading in favor of the absurd. Under the VA's rules, a veteran who served ten continuous years after 9/11 can receive a maximum of 36 months of benefits under the GI Bills—and may switch from Montgomery to Post-9/11 benefits only if this service began before August 1, 2011. *See* Appx0006; Appx0035-0036. But an otherwise identical veteran who served two different three-year stints—separated by a break—during this same ten-year period receives 12 more months of benefits despite having served four years fewer. That cannot be right. *See United States v. Turkette*, 452 U.S. 576, 580 (1981) ("absurd results are to be avoided").

These absurd results are exemplified by several petitioners here. Petitioners Paul Yoon (nearly 24 service years), Toby Doran (more than 27 service years), Kenneth Bratland (more than 34 service years), and Kassidy Perkins (six service years) were denied their full 48 months of benefits under the VA's rules for one reason: their service was continuous. More recently, Amanda Gomes—an IAVA member who served in the Coast Guard for more than 20 years—and Kevin Quarderer—a VFW member who served in the Navy for more than 30 years—were likewise denied their full benefits because they chose to serve continuously, as have up to 1.2 million similarly situated veterans and servicemembers.

The VA's rules impose atextual requirements that wrongly deny entitlements to veterans simply because they chose to serve their country continuously. Because these invented requirements are incompatible with the plain text of the GI Bills, the Court should vacate or set aside the VA's unlawful rules. *See* 5 U.S.C. § 706(2).

> ### 2. The Supreme Court squarely rejects the VA's interpretation.

The plain-text reading that petitioners present is confirmed by the Supreme Court and the Veterans Court, both of which have rejected the VA's contrary interpretation of the GI Bills.

In *Rudisill*, the Supreme Court addressed whether Mr. Rudisill—who served eight years of active duty over three distinct periods—was separately entitled to

benefits under both GI Bills. It held that a veteran whose length of service qualifies him for entitlements under both GI Bills is "separately entitled to each of [the] two educational benefits" and "may use his benefits, in any order, up to [the] 48-month aggregate-benefits cap." 601 U.S. at 306, 314. The Court explained:

> Per § 3322, servicemembers who are eligible for educational benefits under either the Montgomery GI Bill or the Post-9/11 GI Bill—from a period of service that could qualify for either program—can opt to credit that service toward one educational benefits program or the other. *If servicemembers serve for long enough, they may be entitled to both.*

*Id.* at 301–02 (emphasis added). The Court did not—as the VA now does—focus on whether a veteran had multiple, noncontinuous "periods of service." The Court instead held the opposite: the education benefits "analysis does not focus on [a veteran's] periods of service"; "[r]ather, what matters is that his *lengthy* service conferred two separate entitlements." *Id.* at 306 (emphasis added).

Moreover, the Court held that "no statutory constraint prevents [a veteran] from accessing his benefits, up to 48 months, in whichever order he chooses" and that "absent specified limits, the VA is statutorily obligated to pay him 48 months of benefits." *Id.* Whatever other limits may apply, a veteran's benefits are not contingent on having a break between distinct "periods of service." *Rudisill* therefore squarely rejects the interpretation of § 3322(h) on which the VA's break-in-service requirement is based.

Indeed, the Veterans Court confirmed that *Rudisill* forecloses the VA's benefits-reducing interpretation of the GI Bills in *Perkins v. Collins*, 38 Vet. App. 304 (2025). There, the issue was whether Ms. Perkins's six years of continuous service entitled her to full benefits under both GI Bills. The court held that, under *Rudisill*, a veteran "whose single period of service is long enough to qualify for benefits under both the [Montgomery] and Post-9/11 programs without using any period of time twice to establish eligibility is entitled to receive benefits under both programs up to a statutory 48-month cap on such educational benefits." *Id.* at 306. The VA's contrary interpretation therefore conflicts with *Rudisill. See id.* at 311, 316.

The VA's rules, which purport to interpret and apply the GI Bills and *Rudisill*, cannot be squared with either. They wrongly limit a veteran's educational benefits based on whether the veteran served continuously. This break-in-service condition conflicts with both the plain statutory text and binding case law. Thus, the VA's rules are unlawful and should be vacated or set aside.

### B.    The VA's rules are arbitrary and capricious.

"The APA requires a reviewing court to 'hold unlawful and set aside agency action' found to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *FDA v. Wages & White Lion Invs., LLC*, 604 U.S. 542, 567 (2025) (quoting 5 U.S.C. § 706(2)(A)). An action is "arbitrary and capricious" if

"the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Agency action is also arbitrary if it depends on "individual discretion" without "consideration of or regard for facts, circumstances, fixed rules, or procedures." *Arbitrary*, *Black's Law Dictionary* (12th ed. 2024).

In *State Farm*, the Supreme Court invalidated an agency's rescindment of a rule because the agency did not consider pre-existing alternatives. 463 U.S. at 50–51. There, the agency revoked a mandatory passive-restraint rule without considering an airbags-only alternative. *Id.* Because the airbags-only option was "a technological alternative within the ambit of the existing standard," the agency acted arbitrarily and capriciously by failing to consider it. *Id.* at 51.

The Supreme Court has since clarified that "when an agency rescinds a prior policy its reasoned analysis must consider the 'alternative[s]' that are 'within the ambit of the existing [policy].'" *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020) (quoting *State Farm*, 463 U.S. at 51) (alterations in original). In that case, the Department of Homeland Security terminated an entire immigration

program because the program's benefits were similar to a different program's benefits that were held unlawful. *Id.* at 26–28. But because DHS rescinded both the unlawful benefits component *and* the still-lawful forbearance component without considering the lawful component in its reasoning, the rescission was arbitrary and capricious. *Id.* at 29–30.

The D.C. Circuit has likewise found that agency decisions failing to consider alternatives within the agency's power are arbitrary and capricious. In *International Ladies' Garment Workers' Union v. Donovan*, the Secretary of Labor rescinded restrictions on industrial workers who work at home. 722 F.2d 795, 799–801 (D.C. Cir. 1983). The D.C. Circuit held that, because the "Secretary's explanation of his decision did not provide the slightest indication that he gave any consideration to the alternatives raised in his original notice and the comments," the decision was arbitrary and capricious. *Id.* at 816. Similarly, in *Action on Smoking & Health v. C.A.B.*, the D.C. Circuit vacated an agency's rescission of smoking regulations. 699 F.2d 1209, 1216–17 (D.C. Cir.), *supplemented*, 713 F.2d 795 (D.C. Cir. 1983). There, the "agency offer[ed] no reasoning to support its conclusion" and provided "no evidence" that it considered other proposals. *Id.* at 1217. Because the agency offered no explanation for its decision, the D.C. Circuit invalidated it, holding that to do otherwise "would render judicial review of informal rules meaningless." *Id.*

Here, the record makes clear that the VA failed to consider alternative remedies within its power to address its wrongful denying of benefits to veterans and their dependents, some of whom will be unable to use restored benefits before they age out of eligibility. The VA should have considered and addressed in its rules remedies for harms entirely of its own making.

> **1.** **The VA's rulemaking record is too thin to support reasoned justifications for its facially irrational rules.**

Since the Post-9/11 GI Bill became law, the VA has misinterpreted it to improperly limit the benefits available to veterans and their dependents. Soon after the VA began its misinterpretation misadventure, petitioner James Rudisill brought his individual challenge in *BO v. Wilkie*, 31 Vet. App. 321 (2019). The Veterans Court ruled in Mr. Rudisill's favor, setting binding precedent that the VA was required to follow. *See, e.g.*, *Tobler*, 2 Vet. App. at 14; *BO v. Wilkie*, No. 16-4134, 2020 WL 62631, at *3 (Vet. App. Jan. 7, 2020). Yet the VA continued to deny benefits to veterans and their dependents. According to the VA's own records, by the time the Supreme Court handed down its decision in that case (which was then proceeding as *Rudisill v. McDonough*), roughly 1,040,000 similarly situated veterans[2] had been denied the benefits to which they were entitled. *See, e.g.*, *VA expands access to GI Bill benefits for*

---

[2] *See also* Appx0276 (noting separate denials of up to 1.2 million veterans similarly situated to Ms. Perkins).

*Veterans who served multiple periods of service*, U.S. DEP'T OF VETERANS AFFS. (Jan. 3, 2025), https://perma.cc/6JDK-83EA; *Bureaucratic Barriers: Making VBA Education Services Work For Veterans And Not The Bureaucracy: Hearing Before the Subcomm. On Econ. Opportunity of H. Comm. On Veteran Affs.*, 119th Cong. 7 (2025), https://perma.cc/D6HP-QANU; Appx0125; Appx0135; Appx0148.

The VA rules at issue here followed, and petitioners have challenged them on multiple grounds. These rules (1) conflict with the plain statutory text of the GI Bills; (2) flout the Supreme Court's decision in *Rudisill v. McDonough*; and (3) disregard the Veterans Court's decision in *Perkins*. Dkt.17 at 14–17. In response, the VA has submitted a certified record of only 15 documents. *See* Dkt.49 at 20; Dkt.58 at 2.[3] This threadbare record cannot support the VA's decisions.

An administrative record must "show[] the evidence on which the findings are based, accompanied by the agency's reasoning in reaching its conclusions." *Grit Energy Sols., LLC v. Oren Techs., LLC*, 957 F.3d 1309, 1321 (Fed. Cir. 2020) (quoting

---

[3]After the VA initially filed an incomplete rulemaking record with only 12 documents to which petitioners objected, the VA moved to complete the rulemaking record with three additional documents. *See* Dkt.49. But because those additional documents did not cure the record's deficiencies, petitioners moved to complete the record. *See* Dkt.52. The Court granted the VA's motion in full and petitioners' motion "only to the extent that the parties may address the (in)sufficiency of the record in their merits briefs and petitioners may include the 'three exhibits to the Petition.'" Dkt.58 at 2.

*Pers. Web Techs., LLC v. Apple, Inc.*, 848 F.3d 987, 992 (Fed. Cir. 2017)) (cleaned up). The VA's submitted record omits evidence that it reviewed and referenced in its rulemaking. It did not include the nonpublic interim rules that were replaced, despite the record referencing those rules. Appx0081. Similarly, the record identifies "Key Activities" in the rulemaking process and the dates on which they were completed. Appx0127. Some early "key activities" appear to be in the record. *Compare* Appx0127 ("initial procedures") *with* Appx0071-0073, Appx0074-0096. But other "key activities"—such as the September 12, 2024 "Finalized Total Potentially Impacted Population" and the December 17, 2024 "Finalized Rudisill Implementation Plan"—are absent. Likewise absent is the "formal guidance that will allow the education benefits to be granted" to continuously serving veterans, which the VA represented to several petitioners had "been recommended for approval" in April 2025 but "just need[ed] a signature" and could be finalized within days or even hours. Emergency Mot. for Inj. Pending Appeal, *Yoon v. Collins*, No. 25-1839 (Fed. Cir. June 6, 2025), ECF No. 2, at 637. Despite the VA's repeatedly soliciting questions about the procedural and policy advisories, *see, e.g.,* Appx0073, Appx0081, Appx0098, Appx0104; Appx0107; Appx0116, and about the decision to extend the delimiting date, *see, e.g.,* Appx0109, the record contains zero questions or concerns submitted, reviewed, or considered.

Also absent is the VA's reasoning. The record contains no reasoning in support of the VA's interpretation of the GI Bills, its cabining of *Rudisill*, its delay in implementing *Perkins*, or its failure to consider extending delimiting dates for children or consider reimbursing educational expenses incurred because the VA wrongfully denied benefits. This absence confirms that the VA had no legitimate basis for its decisions, which cannot be cured now. *See Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419 (1971) ("'[P]ost hoc' rationalizations . . . have traditionally been found to be an inadequate basis for review." (citations omitted)).

2. **The VA's failure to even consider reimbursing veterans and their dependents for unlawfully denied benefits is arbitrary and capricious.**

The VA only partially considered how to remedy its unlawful denying of education entitlements under its interpretation of the GI Bills. The VA confirmed that some veterans and their dependents would be unable to use restored benefits. Appx0036. But the VA did not consider the most obvious option to make whole those who had been unlawfully denied their benefits: reimbursing them. *See* 38 U.S.C. § 503. The VA's paper-thin record confirms that the only remedy it considered was a limited extension of the delimiting dates for veterans and their dependent spouses (but not for dependent children). *See infra* Sec.II.B.3. Thus, the VA "entirely failed

to consider an important aspect of the problem." *State Farm*, 463 U.S. at 43. This failure to even consider other remedies was arbitrary and capricious.

The VA, through the Secretary, has authority to grant a retroactive award of benefits, including the payment of money for unlawfully denied benefits and extending a delimiting date. The VA may provide any relief for an "administrative error on the part of the Federal Government" found equitable, including the payment of money. 38 U.S.C. § 503(a). And if a "veteran, surviving spouse, child of a veteran, or other person has suffered loss as a consequence of reliance upon a determination by the Department of eligibility or entitlement to benefits," the VA may provide relief "including the payment of moneys to any person whom the Secretary determines is equitably entitled to such moneys." 38 U.S.C. § 503(b).

The VA has conceded—and this Court has recognized—that the VA has statutory authority to "reimburse [veterans] for statutorily required educational benefits that were unlawfully withheld." *Yoon*, 2025 WL 1765453, at *2. And the VA successfully argued to this Court that this authority may be exercised in response to court orders to "compel action of the Secretary unlawfully withheld" and other provisions of 38 U.S.C. § 7261(a). Resp't's Mot. to Dismiss at 16–17, 21, *Yoon v. Collins*, No. 2025-1839 (Fed. Cir. June 13, 2025), ECF No. 26. Section 7261(a), of course, mirrors the same relief that this Court may order under 5 U.S.C. § 706. *See*

38 U.S.C. § 502 (requiring that judicial review be exercised "in accordance with chapter 7 of title 5").

The VA, however, did not even consider doing so. And for no discernible reason—certainly none in the record. The VA acknowledges that it wrongfully denied benefits from more than a million veterans and their dependents before *Rudisill* was decided. Appx0122; Appx0126. Even though the VA *can* reimburse these veterans and their dependents for the out-of-pocket costs they incurred—costs the VA *should* have covered—the VA failed to even consider that option, let alone justify its omission. That is textbook arbitrary and capricious decision-making.

The record contains no evidence that the VA considered reimbursing beneficiaries to remedy its mistakes. The VA tracked claims "which [met] the criteria for *BO v. Wilkie*" as "*BVW*" claims for more than four years, Appx0162; *see also* Appx0160, and "evaluated the impacts of [*Rudisill*]" for "several key policy determinations," Appx0106. But the record contains only one decisional memorandum. That memorandum shows that the VA did not consider reimbursement. Appx0108-0109. Failure to even consider this remedy was error. And this error is compounded by the VA's continued failure to offer reimbursement to the additional 1.2 million veterans wrongfully denied benefits because of the VA's unlawful break-in-service requirement. Appx0276.

The VA's failure to even consider reimbursement as a remedy is arbitrary and capricious. The VA recognized that merely restoring benefits—i.e., making them available again—was insufficient. Appx0036; *see* Appx0123 (recognizing that, because of its rules, some "[v]eterans would be unable to use" their entitlements). But then it did nothing about it. The VA wrongfully denied benefits for roughly fifteen years—longer than it takes to complete a traditional bachelor's degree. Many veterans and their dependents who were in school or just beginning their academic pursuits continued their education despite the wrongful denial of benefits and incurred expenses as a result.Appx0165-166; Appx0169-0171. The VA "analyzed education program data to group the potentially impacted beneficiaries impacted by the Supreme Court's decision," Appx0137, and studied the amount of benefits affected veterans had remaining and the length of time since they were last in school, Appx0140. This means the VA knew that restoring benefits and extending the delimiting date solely for veterans and spouses would be insufficient to remedy its unlawful denials. Absent from the record, however, is any explanation for the VA's failure to consider how to remedy the wrongful denying of benefits to those for whom restoration is no remedy—i.e., veterans and dependents who continued with their education and (wrongfully) paid out of pocket.

The facts the VA found show that its limited remedies would leave many veterans holding the bag, forced to continue footing a bill the VA should have paid. The most obvious remedy would be to reimburse these affected veterans and their dependents, yet the VA failed to even consider doing so—despite having recently conceded before this Court that it possesses statutory authority to make such reimbursements. And the record contains no justification for this choice. The VA therefore failed to provide a "rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43. That is the definition of arbitrary and capricious.

### 3. The VA's failure to consider extending the delimiting date for all dependents is arbitrary and capricious.

The VA's decision to extend delimiting dates for veterans and spouses while refusing to do so for their children is arbitrary and capricious because it treats similarly situated beneficiaries differently without justification. As discussed above, the VA knew that simply restoring benefits was insufficient to remedy its wrongful denials. Appx0108-0109. So the VA extended the delimiting date for veterans and their spouses to use "restored benefits which were previously inaccessible or reduced." Appx0036. But the VA failed to do the same for their children. Appx0049 (Note 2: "Children are not eligible for Delimiting Date extensions."); Appx0051 (same). The VA's rules provide no reason for treating dependent children differently

from dependent spouses. The VA's unsupported, unexplained decision is arbitrary and capricious.

The VA is supposed to treat children and spouses to whom veterans transfer their benefits the same as the veterans. Under the GI Bills, "the dependent to whom the entitlement is transferred shall be treated as the eligible individual for purposes of [the administrative provisions of this chapter]." 38 U.S.C. § 3319(h)(7); *see id.* §§ 3319(h)(2)(A), (B) (explaining that the "spouse" and "child" are each "entitled to educational assistance under this chapter in the same manner as the individual from whom the entitlement was transferred"). The administrative provisions include § 3321, which governs limitations on using Post-9/11 benefits and the tolling framework the VA invoked to extend delimiting dates for veterans and spouses. So if the VA extends delimiting dates for veterans and spouses, it should likewise extend them for children to ensure that they, too, are "treated as the eligible individual."

Here, the VA decided that its unlawful denial of benefits to veterans and spouses was a "covered reason" for which it could extend delimiting dates as to them. 38 U.S.C. § 3031(i)(2)(B); *see* Appx0110; Appx0036, Appx0047. It did so because their benefits were "previously inaccessible or reduced" by the VA's prior, wrongful interpretation. *Id.* But the VA then failed to similarly extend the delimiting date for children to ensure they, too, are treated "in the same manner" as the veteran.

38 U.S.C. § 3319(h)(2)(B). And the record contains no evidence that the VA even considered granting such relief to children.

The VA determined that simply restoring benefits was insufficient to remedy its wrongful pre-*Rudisill* denials, Appx0036, but then considered only one remedy—a limited delimiting-date extension for veterans and spouses—without explaining why children were excluded, Appx0110. The VA had ample evidence that this omission would cause irreparable harm: it knew that more than 77,000 children had been denied Post-9/11 benefits, Appx0136; Appx0149, and it analyzed how much time had passed since affected beneficiaries were last in school, Appx0140. The VA therefore knew that children approaching or past age 26 would lose their benefits entirely. Yet nothing in the record shows that the VA considered or analyzed extending to these children the relief it offered to spouses. That is a paradigmatic failure to "consider an important aspect of the problem." *State Farm*, 463 U.S. at 43.

The VA's treating spouses and children differently despite their similar situations, *see, e.g.,* Appx0047, and despite the statutory direction to treat them the same as the veterans from whom their benefits were transferred, is inexplicable. And the VA's record offers no explanation. The failure to offer an explanation is fatal to the VA's rules. *See Donovan*, 722 F.2d at 817 ("[T]he APA demands an adequate explanation when these alternatives are rejected."). Children's transferred benefits

were inaccessible or reduced for the same reason they were for spouses, so there is no reason to extend the delimiting date for one but not the other—the VA's unlawful denials harmed both dependents in the same way. The VA's failure to offer "reasons for treating similar situations differently" is "arbitrary and capricious." *Nazareth Hosp. v. Sec'y U.S. Dep't of Health & Hum. Servs.*, 747 F.3d 172, 179–80 (3d Cir. 2014) (quoting *Muwekma Ohlone Tribe v. Salazar*, 708 F.3d 209, 216 (D.C. Cir. 2013)).

The VA's exclusion of children from the delimiting-date extension causes concrete, irreparable harm to real beneficiaries. For example, Ms. Bratland tried to use benefits that her father transferred to her in 2021 while she was a student at the University of Arizona. Appx0165-0166. But the VA unlawfully limited the total benefits he could receive—and therefore could transfer to his children—to 36 months, forcing them to pay out of pocket. *Id.* Ms. Bratland still needs Post-9/11 benefits to continue her education, but she turns 26 this year. *Id.* She therefore may not be able to use any Post-9/11 benefits transferred to her before she turns 26. The VA's rules thus arbitrarily deny Ms. Bratland—and the tens of thousands of similarly situated children—the benefits to which they are entitled yet were unlawfully denied or otherwise unable to access under the VA's wrongful interpretation of the GI Bills.

### 4. The VA arbitrarily treats veterans differently based on when their service began and whether their service was continuous.

As set forth above, *supra* Sec.II.A.1, the VA's rules treat veterans differently based on when their service began and whether it was interrupted by a break. There is no textual basis for treating veterans who served continuously differently from those whose service was interrupted by a break or for treating veterans who began serving before August 1, 2011, differently from those who began serving after that date. *Supra* Sec.II.A.2. More fundamentally, these distinctions lead to absurd results.

Congress expanded the scope of GI Bill benefits in 2008 in recognition that military service "has been especially arduous for the members of the Armed Forces since September 11, 2001," and that "[e]ducational assistance for veterans . . . has a positive effect on recruitment for the Armed Forces." Post-9/11 Bill, Pub. L. No. 110-252, title V, § 5002, 122 Stat. 2357, 2358. These goals are undermined by the VA's arbitrary distinctions based on service continuity and start date. As discussed above, the VA's break-in-service requirement provides 48 months of benefits to veterans with six years of service across two separate enlistments but limits petitioners Paul Yoon, Toby Doran, and Kenneth Bratland to 36 months of benefits despite their having served for decades. *Supra* Sec.II.A.1. Similarly, the VA's rule about service beginning on or after August 1, 2011, prohibits the provision of full

benefits to veterans like petitioner Perkins or anyone serving in harm's way today, despite the entire length of those veterans' service having occurred after September 11, 2001. *Id.* These results are absurd and directly contrary to the clear purpose of the GI Bills that the VA's rules purport to enforce. The VA's interpretation, as set forth in the rules, is arbitrary and capricious and should be set aside. *See, e.g., State Farm*, 463 U.S. at 43 ("an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider").

III. PETITIONERS EACH HAVE STANDING TO CHALLENGE THE VA'S UNLAWFUL RULES.

Petitioners must have "standing to sue," which requires "hav[ing] a personal stake in the dispute." *Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100, 110 (2025) (citation omitted). In some cases, like here, a petitioner's "standing to seek review of administrative action is self-evident; no evidence outside the administrative record is necessary for the court to be sure of it." *Phigenix, Inc. v. Immunogen, Inc.*, 845 F.3d 1168, 1173 (Fed. Cir. 2017) (citation omitted). "Self-evident standing typically arises when an appellant is an object of the action (or forgone action) at issue." *Id.* (citation omitted). If a petitioner is the "object of the action (or forgone action) at issue, then there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Diamond Alternative Energy*, 606 U.S. at 112. And "[o]nly

one of the petitioners needs to have standing to permit [this Court] to consider the petition for review." *Massachusetts v. EPA*, 549 U.S. 497, 518 (2007).

Petitioners each have standing to bring this action.

## A. The VFW and IAVA are veteran service organizations with associational standing.

The VFW and IAVA have associational standing to bring this suit on behalf of their members. To establish associational standing, an organization must show that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *NOVA*, 981 F.3d at 1368 (quoting *Hunt v. Wash. State Apple Advert. Comm'n,* 432 U.S. 333, 343 (1977)). The VFW and IAVA satisfy each prong.

The first prong requires showing that the VFW and IAVA have "at least one veteran member with an actual or potential claim that could be affected by the challenged rule." *Mil.-Veterans Advoc. Inc. v. Sec'y of Veterans Affs.,* 7 F.4th 1110, 1123 (Fed. Cir. 2021). Both do. For example:

- Petitioner Rudisill is a VFW and IAVA member and has shown that the VA still has not awarded him his full required benefits, a particularized injury traceable to the VA's action that this Court can redress. *See* Appx0164; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

- Amanda Gomes is an IAVA member who served five continuous years in the U.S. Coast Guard. Appx0169-0184. She used all 36 months of her Post-9/11 benefits and none of her Montgomery benefits, yet was denied the full 48 months of benefits to which she is entitled because her service was continuous. *Id.* The VA's wrongful denial has harmed her because it forced her to use other funding sources to pay for her education and increased her financial burden without the ability to be reimbursed for expenses paid. *Id.*

- Russell Dreesman is a VFW member who served 20 continuous years in the U.S. Air Force. Appx0194-0201. He used seven months and 19 days of Montgomery benefits, none of his Post-9/11 benefits, and transferred his unused Post-9/11 benefits to his children in college. *Id.* The VA limited his Post-9/11 entitlements to the 28 months and 11 days he had left of Montgomery benefits because his service was continuous. *Id.* The denial of his full 48 months of benefits forced him to pay out of pocket for educational expenses and affected what schools his children can apply to and attend. *Id.* And because the VA's delimiting-date extension does not apply to his children, who are 18 and 21, they may age out of eligibility before the VA transfers to them all the benefits to which he is entitled. *Id.*

- Kevin Quarderer is a VFW member who served 33 continuous years in the U.S. Navy. Appx0185-0193. He transferred all 36 months of his Post-9/11 benefits to his three children, aged 26, 24, and 19. *Id.* His youngest child is a freshman at the University of Michigan and will run out of benefits in March 2026. *Id.* He was denied the additional 12 months of Montgomery benefits to which he is entitled because his service was continuous. *Id.* Because the VA did not extend delimiting dates for children, this denial will force him to pay out of pocket for any further education for his children, who either have or may age out of eligibility before the VA transfers to them all the remaining benefits to which he is entitled. *Id.*

- Kassidy Perkins is a VFW and IAVA member who served six continuous years in the U.S. Air Force. *Perkins*, 38 Vet. App. at 305. Because her service was continuous and entirely after August 1, 2011, she was denied her full 48 months of benefits and limited to 36 months of benefits. *Id.* at 307.

- Daniel Stigall is a VFV and IAVA member who served in the U.S. Army from 2001 to 2009 and was honorably discharged. Appx.0206–0229. He subsequently entered the U.S. Army Reserves, where he continues to serve today. *Id.* He has used approximately ten months and four days of Montgomery GI Bill benefits. In 2013, he tried to transfer 36 months of Post-9/11 GI Bill benefits to his daughter, who is 19 and a sophomore in college. *Id.* The VA limited his Post 9/11 benefits to only 25 months and 26 days because he used ten months and four days of Montgomery benefits and his service was continuous. *Id.* This has limited the amount of benefits he can transfer to his daughter and has forced him to use other funding sources to pay for education. *Id.* In addition, the VA's failure to extend delimiting dates for his daughter injures him and her because she may age out of eligibility before the VA transfers all the remaining benefits to which he is entitled. *Id.*

These VFW and IAVA members, and thousands like them, would otherwise have standing to sue in their own right because they are harmed or will be harmed by the VA rules that incorrectly interpret and arbitrarily and capriciously limit or apply the GI Bills. These rules wrongly deny or limit VFW and IAVA members' earned entitlements, contrary to law and Supreme Court precedent.

The second prong requires showing that protecting these members' earned entitlements is "germane" to the VFW's and IAVA's purposes. *See NOVA*, 981 F.3d at 1368. It is germane for both organizations. The VFW is a nonprofit veterans service organization established in 1899 and, together with its Auxiliary, represents more than 1.4 million members. The VFW was formed by veterans who, after returning home from war in the late 1800s wounded or sick, found that they were left to care for themselves. These veterans responded by founding local organizations to

secure rights and benefits for their military service. Many of these veterans and the organizations they formed then banded together to become what is now known as the VFW.

Although the VFW's role has expanded over the past 127 years, its core purposes of advocating for veterans and ensuring that they and their families receive their earned benefits remain unchanged. The VFW's mission and vision statements focus on serving those who have served and advocating to ensure they receive their earned entitlements:

> Our Mission: To foster camaraderie among United States veterans of overseas conflicts. To serve our veterans, the military and our communities. To advocate on behalf of all veterans.

> Our Vision: Ensure that veterans are respected for their service, always receive their earned entitlements, and are recognized for the sacrifices they and their loved ones have made on behalf of this great country.

*About Us*, Veterans of Foreign Wars, https://www.vfw.org/about-us (last visited Mar. 4, 2026).

The VFW helped establish the VA and create both the World War II GI Bill and the Post-9/11 GI Bill. Many of its members qualify for benefits under both the Montgomery and the Post-9/11 GI Bill. To be a member, you must meet two requirements. First, you must be currently serving in the Armed Forces of the United States or have previously served and received either an Honorable or General (under honorable conditions) discharge. Second, you must have served in a war,

campaign, or expedition on foreign soil or in hostile waters. Many members, by meeting these membership criteria, necessarily qualify for benefits under both the Montgomery and Post-9/11 GI Bills.

The interpretation of these two GI Bills and the provision of education benefits to veterans under them are therefore vitally important to the VFW and its mission. The interpretation of these veterans' benefits laws impacts many of the VFW's members and the VFW's past and future efforts to ensure that veterans receive respect for their service, always receive the entitlements they have earned, and are recognized for the sacrifices they and their loved ones have made.

IAVA is a nonprofit and nonpartisan organization dedicated to improving the lives of Iraq and Afghanistan veterans and their families. It is the first and largest national veterans service organization dedicated exclusively to current and former volunteer service members. Its membership comprises more than 425,000 active veterans and civilian supporters across all 50 states. Many of IAVA's members qualify for benefits under both the Montgomery and the Post-9/11 GI Bill.

From its founding in 2004, IAVA has worked vigorously to support and expand veterans' benefits and to protect the GI Bills. In fact, in 2007 and 2008, IAVA was a leading voice among veterans service organizations in the media and in Congress in support of the Post-9/11 GI Bill then under debate. IAVA's research at

the time—which IAVA published among Congressional staffers and the public—indicated that if enacted, the Post-9/11 GI Bill's enhanced education benefits would provide a critical boost to the military's flagging recruitment efforts. Together with other veterans' service organizations and allies in Congress, IAVA helped drive the bipartisan consensus that propelled the Post-9/11 GI Bill into law.

As one of the instigating forces behind passage of the Post-9/11 GI Bill and the voice of more than 3 million post-9/11 veterans, IAVA has a unique interest in the scope and application of education benefits stemming from the GI Bills—the central issue here.

The VA rules challenged here are therefore germane to both the VFW's and IAVA's purposes.

As for the third prong, neither the claims asserted nor the relief sought here requires that individual VFW or IAVA members participate. This is because the petition raises "purely legal question[s]" about whether the VA's rules are arbitrary and capricious or comply with statutory law and binding precedent that "do[] not require 'individualized proof'" to resolve. *NOVA*, 981 F.3d at 1371 (quoting *Hunt*, 432 U.S. at 344). Thus, both the VFW and IAVA have associational standing to challenge the VA rules here.

## B. The Commonwealth of Virginia has standing.

The Commonwealth of Virginia has standing because the challenged VA rules impose ongoing concrete financial burdens on the Commonwealth. Virginia is home to nearly 700,000 veterans, many of whom rely on federal GI Bill education benefits. The Commonwealth also operates its own veterans-support programs and allocates tens of millions of dollars annually to its Department of Veterans Services to administer those programs. One such program is the Virginia Military Survivors and Dependents Education Program ("VMSDEP"), which provides tuition assistance to dependents of certain veterans. VMSDEP was designed to supplement—not replace—the federal GI Bills, which account for the vast majority of education spending for veterans and their families nationwide.

When the VA unlawfully limits or denies GI Bill benefits, veterans and their dependents receive fewer federal education dollars than Congress mandated. In federal fiscal year 2024, approximately $849 million in GI Bill benefits were paid to Virginia recipients, and more than 46,000 Virginia veterans received GI Bill education benefits. See Va. Dep't of Veterans Servs., Commissioner's 2025 Annual Report (2025), https://rga.lis.virginia.gov/Published/2025/RD942/PDF; Va. Dep't of Veterans Servs., Commissioner's 2024 Annual Report (2024), https://rga.lis.virginia.gov/Published/2024/RD907/PDF. Given the scale of that

federal funding stream and the number of beneficiaries who rely on it, even a modest reduction in eligibility predictably displaces affected dependents from federal support. As a result, eligible dependents turn to VMSDEP to finance educational expenses that federal benefits should have covered. The challenged directives therefore shift education costs from the federal government to the Commonwealth, increasing Virginia's financial obligations.

That cost shifting is neither speculative nor abstract. In 2025, 9,876 students used VMSDEP benefits, and the Commonwealth awarded more than $10 million in related stipends. *See* COMMISSIONER'S 2025 ANNUAL REPORT at 14. VMSDEP was not structured or funded to absorb the gap created by the VA's refusal to provide the full federal benefits to which veterans and their families are entitled. Restoring lawful administration of the GI Bills would redirect those federal funds where Congress required them to flow and alleviate the financial pressure imposed on Virginia's programs. That suffices to establish Article III standing. *See, e.g.*, *Dep't of Com. v. New York*, 588 U.S. 752, 766-68 (2019) (recognizing standing based on predictable loss of federal funds); *Biden v. Nebraska*, 600 U.S. 477, 489-94 (2023) (finding standing where federal student-loan policy caused financial harm to state-created entity).

Finally, Virginia also has a sovereign interest in ensuring that federal programs operating within its borders are administered in accordance with federal law and do not improperly shift fiscal obligations onto the Commonwealth. See *Massachusetts*, 549 U.S. at 518–20 (recognizing that States receive "special solicitude" in the standing analysis when asserting quasi-sovereign interests and challenging unlawful federal action). The Court need not rely solely on that principle here, however, because the Commonwealth has demonstrated a concrete fiscal injury, and its sovereign interests reinforce, rather than replace, that direct injury.

### C.    The individual veteran petitioners have standing.

The individual petitioners all have standing because they are the "object of the action (or forgone action) at issue," *Phigenix*, 845 F.3d at 1173 (citation omitted), given that the VA has denied their benefits and failed to remedy past denials under its rules, *see* Pet.17–27.

Mr. Doran, Mr. Bratland, and Ms. Bratland have been directly injured in the most concrete way—the VA's unlawful denial of benefits under the interim rules caused a pocketbook injury. *Uzuegbunam v. Preczewski*, 592 U.S. 279, 293 (2021) (nominal damages as little as one dollar sufficient for injury-in-fact requirement). In 2021, the VA improperly limited the benefits Mr. Bratland transferred to his daughter, causing him to pay "significant amounts out of pocket." Appx0165.

Now, the VA's arbitrary and capricious rules, which fail to remedy past denials to veterans' children (unlike the remedy available for veterans and spouses), will likely prevent Ms. Bratland from using the benefits she should have previously received. *Id.* Similarly, the rules' failure to provide for the retroactive award of benefits unlawfully denied causes harm to Mr. Bratland, Appx0165-0166, and Mr. Doran, *Yoon v. Collins*, No. 25-0255 (Vet. App.). Mr. and Mrs. Yoon also incurred a pocketbook injury to cover expenses that Mr. Yoon's benefits should have covered. And none of the individual petitioners can have these expenses—expenses their entitled benefits should have covered—reimbursed, giving them an undeniable "personal stake in this dispute." *Diamond Alternative Energy, LLC*, 606 U.S. at 110.

Moreover, Ms. Yoon still faces the threat of the VA readjudicating benefits each semester and following the conflicting manual provisions. Appx0167-0168. Although the manual has new information related to entitlements under *Perkins*, Subchapter 10, Part B.2 remains unchanged, *see* Appx0230-0274, and would require the Buffalo regional office to deny Ms. Yoon benefits next semester, Appx0167-0168, despite her father's 24 years of continuous service. Both the injury and the threatened loss give the Yoons standing.

Further, it is uncontested by the VA that the VA's rules require the regional offices to deny benefits to Ms. Perkins and Mr. Rudisill, should they submit a claim for the benefits to which they are entitled.

## Conclusion

More service should not result in fewer benefits. Yet the VA says otherwise by imposing a break-in-service requirement that has no basis in law or logic. Indeed, this requirement contradicts Supreme Court precedent. The VA, however, has left veterans holding the bag to pay for the VA's mistakes. The Court should therefore vacate or set aside the VA's rules that impose an unlawful break-in-service requirement and arbitrarily and capriciously fail to even consider allowing for retroactive reimbursement for wrongfully denied benefits or extending delimiting dates for dependent children, and treat otherwise identical veterans differently based on when their service began and whether it was continuous.

Dated: March 5, 2026                    Respectfully submitted,

By:        */s/ Luke A. Schamel*

Luke A. Schamel
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000

*Counsel for the Veterans of Foreign Wars of the United States*

*/s/ Tillman Breckenridge*
Tillman Breckenridge
*Solicitor General*

JAY JONES
*Attorney General*

Ethan P. Fallon
Mikaela Austin Phillips
Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 371-0200 – Facsimile

*Counsel for the Commonwealth of Virginia*

*/s/ Mary Grace W. Metcalfe*
Mary Grace W. Metcalfe
TROUTMAN PEPPER LOCKE LLP
875 Third Avenue
New York, New York 10022
(212) 704-6029

MaryGrace.Metcalfe@troutman.com
Timothy L. McHugh
Jeff P. Johnson
McKayla J. Riter
1001 Haxall Point
Richmond, Virginia 23219
(804) 697-1365
(804) 697-1480
(804) 697-1486
Tim.mchugh@troutman.com
Jeff.Johnson@troutman.com
McKayla.Riter@troutman.com

Misha Tseytlin
111 South Wacker Drive
Suite 4100
Chicago, Illinois 60606
(312) 759-5947
Misha.Tseytlin@troutman.com

*Counsel for James Rudisill, Kassidy
Perkins, Paul Yoon, Elizabeth Yoon, Toby
Doran, Kenneth Bratland, and McKenna
Bratland*

*/s/ Todd C. Toral*
Todd C. Toral
JENNER & BLOCK LLP
2029 Century Park East
Suite 1450
Los Angeles, California 90067-2901
(213) 239-2294
ttoral@jenner.com

Steven J. Arango
1099 New York Avenue, NW
Suite 900
Washington, DC 20001-4412
(202) 637-6348
sarango@jenner.com

*Counsel for Iraq and Afghanistan Veterans
of America*

# Addendum

| M22-4, Part 3, Chapter 3, Subchapter 2, Section 3.10 and attachments | App.0001-0033 |
|---|---|
| M22-4, Part 4, Chapter 13, Subchapter 10 and attachments | App.0034-0068 |

**Extracted from M22-4, Part 3, Chapter 3, Subchapter 2, Section 3.10**

**November 12, 2025**

**3.10  ELECTIONS**

---

There are two separate and distinct types of elections claimants must make.
A Period of Service (POS) Election is an election to point a period of service to one benefit instead of another.

An In lieu of (ILO) Election is an election to forfeit one benefit in order to qualify for Chapter 33. The ILO election has two distinct parts:

Benefit to forfeit and the Effective date of the forfeiture

These two types of elections have two different sets of rules for VCEs to follow to ensure the claimant makes the appropriate election.

> **a. Differences in Election types.**
>
> > (1) POS election. A specific period(s) of service used towards establishing eligibility for a benefit. Once a period of service has been applied toward a specific benefit, that period of service may not be used again to establish eligibility for another benefit. A period of service beginning before August 1, 2011, may be used to establish eligibility under more than one benefit. **See Rudisill information in section below**.
> >
> > (2) ILO election. An ILO election is generally optional when the election would be advantageous. An ILO election may be required under chapter 33 benefits in coordination with chapter 30 in limited situations. **See Rudisill information in section below**.
>
> **b. Point of Irrevocability.**
>
> > (1) POS Election. The issuance of the first payment makes this election irrevocable. A beneficiary may make a change in the election of benefits after a Certification of Eligibility (COE) has been issued provided NO payment has been released.
> >
> > (2) ILO Election. The issuance of the COE makes this election irrevocable. Payment is not a factor for an ILO election.
> >
> > **EXAMPLE:** A Service member applies for Chapter 30 benefits, receives a COE, then decides they should have applied for Chapter 33 benefits prior to receiving payment for benefits under Chapter 30 because they will not be able to convert later based on a single period of active duty service. Since

this is an example of POS election, the beneficiary may make the change of elections since the payment has not been issued.

**c. Availability of "alternative election" ([38 USC 3327 (h)](); [Section 405 of Public Law 114-315]()).**

    (1) POS election is NOT AVAILABLE for an alternative election.

    (2) ILO election. VA may elect on behalf of the service member or Veteran and may modify the effective date.  A TOE approval date cannot be modified.

**d. Use of Alternative Elections.** VA has the authority to make an alternative election (forfeited benefit and/or effective date of forfeiture) on behalf of an individual that failed to make an election or submitted an election on or after January 1, 2017 that was not in their best interest.

As a general rule, VA will not exercise this authority to override a valid election.  However, an alternative election will be appropriate under limited circumstances, or when required for coordination of chapter 33 and chapter 30 benefits. This authority eliminates the need to develop for valid benefit forfeiture or the need to gain prior authorization to alter the effective date of the benefit forfeiture.

**NOTE:**  If the Veteran is deceased and was eligible for more than one benefit other than chapter 33 at the time the transfer of entitlement was approved, special consideration will be required if the available transferred entitlement would be diminished (chapter 30) and/or the Veteran's eligibility included a kicker (chapter 30/1606).

**e. Processing Steps for Alternative Election.**

    **See Rudisill information in section below.**

**f. Disagreement with VA's alternative election.**

    (1) If the beneficiary's response is timely (within 30 days of the claimant's receipt of VA's notice), the VCE should replace the alternative election with the election provided in the beneficiary's response. If the beneficiary insists on an election that VA has determined to be not in the best interest of the beneficiary, the VCE must process the claim in accordance with the beneficiary's request for benefits. The VCE does not have the authority to override a beneficiary's response disagreeing with VA's alternative election. If the claimant continues to insist on an election which is invalid, then the VCE will process accordingly, including but not limited, to denial of the claim.

    (2) Although the beneficiary only has 30 days to disagree with the alternative election, VA will only enforce this limitation if benefits have already been paid based on VA's alternative election. In other words, so long as benefits have NOT been paid, the VCE will change the election VA made to the election requested by the beneficiary in his or her response regardless of

how much time has passed. However once a payment is made based on the alternative election, VA will enforce the 30 day limitation.

VCEs should be accommodating towards the beneficiary in the enforcement of the limitation. If there is a question as to whether the beneficiary's response was received timely, the VCE should carefully review the timeline and consider any extenuating circumstances. When a reasonable argument can be made that the beneficiary had not received VA's notice or VA received a notice "shortly" after the 30 day period, the VCE should accept the request of the beneficiary. The VCE should be mindful that the 30 day period begins when the beneficiary "receives" the notification. Extra time should be allotted for delivery of the paper notification. The VCE should always document in the TIMS file in a NOTE with a clear explanation or justification with any request received after 30 days from the date of the original notification. Any notice to VA received after a payment has been made based on VA's alternative election and AFTER 45 days without an acceptable justification will be considered too late. A beneficiary who responds within one year from any VA decision maintain the right to appeal and may submit a notice of disagreement to appeal VA's decision.

**g. Additional Examples and Comments regarding Alternative Elections.**

(1) <u>Modify TOE effective date</u>. The VCE cannot change an effective date on an election when the election is connected to a transfer.

(2) <u>Retroactive Changes</u>. As previously stated, in general, a VCE should not make an alternative election after a claim has been adjudicated. However, provided that the original claim for Chapter 33 was submitted on or after January 1, 2017, the VCE may make an alternative election that is "clearly in the best interest of the individual" up until benefits have been paid. The VCE should not apply this provision once education benefits have been paid to an individual that provided an election. **Exception:** The alternative election should have been made when the claim was previously processed in order to ensure benefit coverage of the training. In this case, retroactively making the alternative election is considered a correction to previous processing even if the beneficiary has already been paid.

(3) <u>Reversing an alternative election and creating overpayment</u>. The VCE may choose an earlier effective date than the one originally elected by the beneficiary. However, an overpayment would result from a beneficiary choosing to get no benefits for the term instead of getting benefits for the term. This example is extremely rare. However, if a beneficiary does respond and requests such a change, it is very likely that the claimant may have failed to understand the explanation provided in the letter. Before processing such a change, the VCE should contact the beneficiary electronically and make one last effort to explain the impact of the beneficiary's choice. If the beneficiary still chooses this course of action, then the VCE should proceed with processing and releasing the debt. This is not considered to be administrative error because VA's decision to make the

original payment was correct at the time and the debt was created due to a choice made by the claimant. If the beneficiary wishes to change his or her mind and agree with VA's alternative election, annotate the TIMS file accordingly and instruct the claimant to submit the change in writing (preferably through Ask VA).

**h. Other Election Examples.** As stated previously, there are specific times when an election is required on the beneficiary's application. Beneficiary's using an electronic version of VA Form 22-1990 must select a benefit. If the beneficiary has used a paper version of VA Form 22-1990, the VCE may have to assist the beneficiary with the decision. Remember an election is no longer required prior to paying benefits when no specific benefit is requested, and the claimant is eligible for multiple benefits based upon **different periods of service**.

(1) <u>No Benefit Checked and Not Eligible for any Benefits</u>

If a beneficiary does not check a specific benefit on the application form and is not eligible for any benefit, the VCE must deny each benefit to which the Veteran is not entitled. The VCE is entitled to an original end product for each disallowed claim.

**NOTE:** The VCE should only deny those benefits to which the beneficiary would have had potential eligibility. Typically a disallowance for Chapter 32 would no longer be necessary as the applicant would not have served during the appropriate time period.

(2) <u>No Benefit Checked and Eligible for Multiple Benefits</u>

If a beneficiary does not check a specific benefit on the application and is eligible for more than one benefit, and an required election is not received, the VCE will do the following:

> (A) When POS or ILO does not apply award eligibility under all benefits entitled. Do not deny benefits not entitled.

> (B) When a POS or ILO election applies, the VCE should send the claimant a development letter fully informing them of eligibility for all potential benefits and requesting an election.

> (C) The VCE should control in AWAIT mail in TIMS for 30 days. If after 30 days no election is received, the VCE should deny the claim as failure to furnish and send the appropriate letter.

(3) <u>Beneficiary Selects Multiple Benefits and is Eligible for More than one Benefit</u>

> Follow instruction for (2) above and deny any selected benefit not entitled.

(4) <u>Beneficiary Selects One Benefit but is not Eligible for that one but is Eligible for two or more others.</u>

If a beneficiary selects one benefit and is not eligible for it, but is eligible for two or more others, the VCE should deny the benefit for which the claimant applied. Follow instructions for (2) above.

**NOTE:** As a reminder, VCEs may only accept written confirmation for elections covered in section 3.10. Examples of a written confirmation include a letter, entry on an application, a Ask VA inquiry, or by other electronic means including email provided the election is complete, identifiable, and in response to a development request. Telephonic elections are not acceptable.

While section 3.10 concerns elections in general, this section does not apply to chapter 35. VCEs may accept chapter 35 elections telephonically. VA must provide written notice and acknowledgement.

**i. Rudisill.**

**Introduction**

On April 16, 2024, the Supreme Court of the United States issued its opinion on case 22-888, Rudisill v. McDonough, Secretary of Veterans Affairs. The case was previously heard by the United States Court of Appeals for Veterans Claims on May 2, 2018, and the United States Court of Appeals for the Federal Circuit on December 19, 2020. The case was formerly known as B.O. (a pseudonym) v. Wilkie.

The Supreme Court held that an election to receive Post-9/11 GI Bill (chapter 33) benefits under 38 U.S.C. § 3327 is only required when "coordination" of Montgomery GI Bill – Active Duty (chapter 30) and chapter 33 entitlement is necessary under § 3322(d).

Therefore, only beneficiaries with a single period of qualifying active-duty service which began prior to August 1, 2011, who have previously used entitlement under chapter 30, and remain eligible for chapter 30 benefits as of the date of their application for chapter 33, will be required to make an election under § 3327 to establish chapter 33 benefits.

All other beneficiaries, including those with a single period of qualifying active-duty service which began on or after August 1, 2011, may make a *voluntary* election under § 3327 to receive a chapter 1606 or 30 kicker under § 3316, and/or a refund of chapter 30 contributions under § 3327(f). A voluntary election may also be made to credit service that began prior to August 1, 2011, and which was previously used to establish chapter 30 eligibility, to increase the chapter 33 benefit level when a beneficiary has multiple periods of service. This voluntary election can be made at any time and the lack of said election is not a bar to eligibility under chapter 33.

**NOTE 1:** If the beneficiary served in a regular component and has a single period of service reported in the "Active Duty Service Periods" section of the Veterans Information Solution (VIS) report, VCE's must review the "Personnel Status" for

conditional discharges due to immediate re-enlistment which are considered separate periods of service. See the System Advisory, "**VIS Updates Installed on December 1, 2020**", dated December 3, 2020, for more information on this functionality.

**NOTE 2:** The bar to duplication based on a single period of service beginning on or after August 1, 2011, detailed in § 3322(h)(1), remains unchanged. A beneficiary with a single qualifying period of active duty which began on or after August 1, 2011, can establish eligibility under chapter 30 *or* chapter 33 based on that period, but not both.

**NOTE 3:** When an election is required, the effective date of the election is up to one year prior to the date of claim of the application by a service member or Veteran, through the date claim (whatever is most advantageous) **or** on the approval date of transferred benefits ("Transfer Request Date" as displayed in VIS), when approved prior to an application submitted by the service member or Veteran.

**Claims Processing Scenarios**

*Veteran is eligible for chapter 33 and chapter 1606.*

An election to give up chapter 1606 benefits is no longer required to establish eligibility under chapter 33. The beneficiary may wish to voluntarily relinquish chapter 1606 benefits to receive a chapter 1606 kicker under chapter 33.

1. **Veteran Relinquished chapter 1606**

   a. Veteran is eligible for a chapter 1606 kicker:

      i. Process claim with the relinquishment.

      ii. If chapter 1606 was previously used, enter the amount of entitlement used into DGI and check the "Eligible" checkbox. Add relinquishment and kicker data.

      iii. Add letter insert in "Attachment A – Ch1606 and Ch33, no Ch30" to the veteran's notification letter immediately following the introduction paragraph:

         1. Select the "Regarding Your Election" paragraph indicating that

an election was
received.

2. Select the "What
We Did"
paragraph
indicating that
the election was
accepted.

    iv.    Do not control the claim for a
response from the beneficiary.

b. Veteran is _not_ eligible for a chapter 1606 kicker:

    i.    Process claim
with **no** relinquishment.

    ii.    If chapter 1606 was previously used,
enter the amount of entitlement used
into DGI, but do not check the
"Eligible" checkbox.

    iii.    Add letter insert in "Attachment A –
Ch1606 and Ch33, no Ch30" to the
veteran's notification letter
immediately following the
introduction paragraph:

1. Select the
"Regarding Your
Election"
paragraph
indicating that
an election was
received.

2. Select the "What
We Did"
paragraph
indicating that
an election was
not made and
no kicker exists.

    iv.    Do not control the claim for a
response from the beneficiary.

2. **Veteran Did Not Relinquish chapter 1606.**

a. Veteran is eligible for a chapter 1606 kicker:

       i.     No alternative election is needed. Process claim with no relinquishment.

      ii.    If chapter 1606 was previously used, enter the amount of entitlement used into DGI, but do not check the "Eligible" checkbox.

    iii.   Add letter insert in "Attachment A – Ch1606 and Ch33, no Ch30" to the veteran's notification letter immediately following the introduction paragraph:

          1.  Select the "Regarding Your Election" paragraph indicating that no election was received.

          2.  Select the "What We Did" paragraph indicating that an election was not made and there is a kicker.

     iv.   Do not control the claim for a response from the beneficiary.

b.  Veteran is _not_ eligible for a chapter 1606 kicker:

       i.     No alternative election is needed. Process claim with no relinquishment.

      ii.    If chapter 1606 was previously used, enter the amount of entitlement used into DGI, but do not check the "eligible" checkbox.

    iii.   No letter insert is needed.

_**Veteran is eligible for chapter 33 and chapter 30 and has a single period of service.**_

An election to give up chapter 30 benefits is _only_ required to establish eligibility under chapter 33 when there is only period of qualifying active duty service, that

service began before August 1, 2011, and the veteran used chapter 30 benefits before the chapter 33 application.

The beneficiary may wish to voluntarily relinquish chapter 30 benefits to coordinate the payment of a chapter 30 kicker and/or receive a refund of their chapter 30 contributions under chapter 33.

1. **Veteran Relinquished chapter 30**

   a. Veteran's election is required:

      i. Process claim with the relinquishment.

      ii. If chapter 30 was previously used, enter the amount of entitlement used into DGI and check the "Eligible" checkbox. Add relinquishment and kicker data.

      iii. Add letter insert in "Attachment B – Ch30 and Ch33, One Period of Service" to the veteran's notification letter, immediately following the introduction paragraph:

         1. Select the "Regarding Your Election" paragraph indicating that an election was received.

         2. Select the "What We Did" paragraph indicating that the election was required and accepted.

   b. Veteran's election is not required, but they are eligible for a chapter 30 kicker:

      i. Process claim with the relinquishment.

      ii. If chapter 30 was previously used, enter the amount of entitlement used into DGI and check the "Eligible"

checkbox. Add relinquishment and kicker data.

    iii.  Add letter insert in "Attachment B – Ch30 and Ch33, One Period of Service" to the veteran's notification letter, immediately following the introduction paragraph:

        1.  Select the "Regarding Your Election" paragraph indicating that an election was received.

        2.  Select the "What We Did" paragraph indicating that the election was accepted and a kicker exists.

c.  Veteran's election is not required, and they are *not* eligible for a chapter 30 kicker:

    i.  Process claim with **no** relinquishment.

    ii.  If chapter 30 was previously used, enter the amount of entitlement used into DGI, but do not check the "Eligible" checkbox.

    iii.  Add letter insert in "Attachment B – Ch30 and Ch33, One Period of Service" to the veteran's notification letter, immediately following the introduction paragraph:

        1.  Select the "Regarding Your Election" paragraph indicating that an election was received.

2. Select the "What We Did" paragraph indicating that an election was not accepted and no kicker exists.

2. **Veteran Did Not Relinquish chapter 30.**

    a. Veteran's election is required:

        i. Process claim with an alternative election.

        ii. If chapter 30 was previously used, enter the amount of entitlement used into DGI and check the "Eligible" checkbox. Add relinquishment and kicker data.

        iii. Replace the "What We Did" section of the letter with the language in "Attachment C – Updated Alternative Election Language."

    b. No election is required, but veteran is eligible for a chapter 30 kicker:

        i. Process claim with no relinquishment. No alternative election is needed.

        ii. If chapter 30 was previously used, enter the amount of entitlement used into DGI but do not check the "Eligible" checkbox.

        iii. Add letter insert in "Attachment B – Ch30 and Ch33, One Period of Service" to the veteran's notification letter, immediately following the introduction paragraph:

            1. Select the "Regarding Your Election" paragraph indicating that

an election was
not received.

2. Select the "What
We Did"
paragraph
indicating that
an election was
not received and
kicker exists.

c. No election is required, and they are _not_ eligible for a
chapter 30 kicker:

i. Process claim with no
relinquishment. No alternative
election is needed.

ii. If chapter 30 was previously used,
enter the amount of entitlement used
into DGI, but do not check the
"eligible" checkbox.

iii. No letter insert is needed.

_Veteran is eligible for chapter 33 and chapter 30 and has multiple periods of service._

When a beneficiary has multiple periods of service, an election to relinquish
chapter 30 is no longer required to establish chapter 33. The beneficiary may
wish to voluntarily relinquish chapter 30 benefits to coordinate the payment of a
chapter 30 kicker and/or receive a refund of their chapter 30 contributions under
chapter 33.

1. **Veteran Relinquished chapter 30**

a. Veteran's benefit level is increased by making an
election and crediting all pre-8/1/11 service to chapter
33:

i. Process claim with the
relinquishment.

ii. If chapter 30 was previously used,
enter the amount of entitlement used
into DGI and check the "Eligible"
checkbox. Add relinquishment and
kicker data.

iii. Add letter insert in "Attachment D –
Ch30 and Ch33, Multiple Periods of
Service" to the veteran's notification

letter, immediately following the introduction paragraph:

1. Select the "Regarding Your Election" paragraph indicating that an election was received.

2. Select the "What We Did" paragraph indicating that the election was accepted due to increased benefit level.

b. Veteran is eligible for a chapter 30 kicker:

   i. Process claim with the relinquishment.

   ii. If chapter 30 was previously used, enter the amount of entitlement used into DGI and check the "Eligible" checkbox. Add relinquishment and kicker data.

   iii. Add letter insert in "Attachment D – Ch30 and Ch33, Multiple Periods of Service" to the veteran's notification letter, immediately following the introduction paragraph:

1. Select the "Regarding Your Election" paragraph indicating that an election was received.

2. Select the "What We Did" paragraph indicating that the election was

accepted and a
kicker exists.

    c.  Veteran is 100% without the election and _not_ eligible for a chapter 30 kicker:

        i.  Process claim with **no** relinquishment.

        ii.  If chapter 30 was previously used, enter the amount of entitlement used into DGI, but do not check the "Eligible" checkbox.

        iii.  Service which is not being credited towards chapter 33 eligibility must be entered into DGI as non-qualifying service with a reason of "Used for Other Benefit".

        iv.  Add letter insert in "Attachment D – Ch30 and Ch33, Multiple Periods of Service" to the veteran's notification letter, immediately following the introduction paragraph:

            1.  Select the "Regarding Your Election" paragraph indicating that an election was received.

            2.  Select the "What We Did" paragraph indicating that an election was not accepted and no kicker exists.

2.  **Veteran Did Not Relinquish chapter 30.**

    a.  Veteran's benefit level would be increased by making an election and crediting all pre-8/1/11 service to chapter 33 **and/or** is eligible for a chapter 30 kicker:

        i.  Process claim with **no** relinquishment.

    ii.    If chapter 30 was previously used, enter the amount of entitlement used into DGI, but do not check the "Eligible" checkbox.

    iii.    Service which is not being credited towards chapter 33 eligibility must be entered into DGI as non-qualifying service with a reason of "Used for Other Benefit".

    iv.    Add letter insert in "Attachment D – Ch30 and Ch33, Multiple Periods of Service" to the veteran's notification letter, immediately following the introduction paragraph:

        1.    Select the "Regarding Your Election" paragraph indicating that an election was not received.

        2.    Select the "What We Did" paragraph indicating that an election was not received and kicker exists or the benefit level could be increased.

b.  Veteran is 100% without the election and *not* eligible for a chapter 30 kicker:

    i.    Process claim with no relinquishment. No alternative election is needed.

    ii.    If chapter 30 was previously used, enter the amount of entitlement used into DGI, but do not check the "eligible" checkbox.

    iii.    Service which is not being credited towards chapter 33 eligibility must be

entered into DGI as non-qualifying service with a reason of "Used for Other Benefit".

    iv. No letter insert is needed.

*Veteran is eligible for chapter 33, chapter 30, and chapter 1606.*

When a beneficiary is eligible for all three benefits, no election is required. No election will be made, even if provided on the application. The beneficiary may wish to voluntarily relinquish a benefit to coordinate the payment of a kicker and/or receive a refund of their chapter 30 contributions under chapter 33.

In these cases:

1. Process claim with **no** relinquishment.

2. If entitlement was previously used, enter the amount of entitlement used into DGI, but do not check the "Eligible" checkbox.

3. Service which is not being credited towards chapter 33 eligibility must be entered into DGI as non-qualifying service with a reason of "Used for Other Benefit".

4. Add letter insert in "Attachment E – Ch30, Ch1606, and Ch33" to the veteran's notification letter, immediately following the introduction paragraph:

    a. Select the appropriate "Regarding Your Election" paragraph indicating whether or not an election was received.

    b. Select all appropriate "What We Found" paragraph(s).

*TOE Claims*

1. chapter 33 - If the request is for benefits under the Transfer of Entitlement (TOE) provision:

    a. Follow the scenario which is applicable to the veteran sponsor.
    b. Assume no election has been made, unless the veteran has applied for benefits in their own right.
    c. Ensure proper notification is provided to the veteran, as described above.

**NOTE:** When processing non-33 claims an ILO election is generally not required. Transferred benefits to dependents or any used entitlement must be accounted as prior used entitlement when establishing eligibility to account for use of more than one benefit limitations.

*Fry Claims*

If the request is for benefits under the Fry Scholarship provision:

1.  If the beneficiary has served in the Armed Forces, and is eligible for a non-chapter 33 benefit other than chapter 35:

    a.  An election to relinquish the non-chapter 35 benefit is not required. Do not develop for this election.

    b.  The election between chapter 35 and Fry Scholarship detailed in § 3322(h)(2), is still required for deaths occurring on or after August 1, 2011.

2.  If the beneficiary has not served in the Armed Forces:

    a.  The election between chapter 35 and Fry Scholarship detailed in § 3322(h)(2), is still required for deaths occurring on or after August 1, 2011.

**NOTE: Letter inserts available in the attachments section below.**

<u>**2024 RUDISILL Attachment A – 1606 and Ch33 NO Ch30**</u>

## Your Potential Eligibility Under Multiple Education Benefits

A recent decision made by the United States Supreme Court has changed VA's interpretation of Section 3327 (h) of Title 38, United States Code. The new interpretation allows beneficiaries more flexibility in the coordination of their VA Education benefit programs.

Generally, an individual education benefit program includes 36 months of benefits. Beneficiaries who are eligible for multiple VA Education benefits are subject to a cap of 48 months of benefits paid under any combination of benefit programs.

## Regarding Your Election

In most cases, an election to give up benefits under another education benefit program is no longer needed to establish eligibility under the Post-9/11 GI Bill. A voluntary election to give up your benefits under the Montgomery GI Bill Selected Reserve may be considered when deciding how to coordinate your benefits. Please review the following information when making this decision.

{USE WHEN AN ELECTION WAS RECEIVED}

Your application included your election to give up your eligibility under the Montgomery GI Bill Selected Reserve, effective {insert date}. Based on your service records, this election was not required to establish your eligibility under the Post-9/11 GI Bill.

{USE WHEN NO ELECTION WAS RECEIVED}

Your application did not include an election to give up your eligibility under the Montgomery GI Bill Selected Reserve to establish your eligibility under the Post-9/11 GI Bill. Based on your service records, no election is required.

## What We Did

{USE WHEN ELECTION WAS ACCEPTED}

We have processed your election, so no Montgomery GI Bill Selected Reserve benefits can be paid after the effective date of your election.

As a result of your election, we can pay your Montgomery GI Bill Selected Reserve kicker under your Post-9/11 GI Bill benefits. **Note:** Your service branch determines your eligibility for a kicker, not VA. If you leave the Selected Reserve or your kicker eligibility ends, it will no longer be payable under any benefit.

Based on your service records, you are not required to give up a benefit to establish your eligibility under the Post-9/11 GI Bill. You may choose to revoke this election to give up your Montgomery GI Bill Selected Reserve benefits. This would allow you to retain eligibility under that benefit.

Revoking your election will affect your Post-9/11 GI Bill benefits as follows:

- You can use no more than 48 months of benefits under any combination of benefit programs.
- Your Montgomery GI Bill Selected Reserve kicker will not be paid with your Post-9/11 GI Bill benefits. Your kicker can only be paid with your Montgomery GI Bill Selected Reserve benefits.
- If you leave the Selected Reserve, your eligibility for benefits under the Montgomery GI Bill Selected Reserve may end even if you have not used all of your benefits under that program.

{USE WHEN ELECTION WAS NOT MADE & ELIGIBLE FOR 1606 KICKER}

We have not made an election to give up benefits under any education program at this time to preserve your potential eligibility under the Montgomery GI Bill Selected Reserve.

Our records indicate that you may be eligible for a Montgomery GI Bill Selected Reserve Kicker.

You may wish to make a voluntary election to give up your Montgomery GI Bill Selected Reserve benefits. This can be done at any time. If you choose to give up that benefit, you can be paid for your Montgomery GI Bill Selected Reserve Kicker under the Post-9/11 GI Bill, beginning on your election date. If you choose to retain your Montgomery GI Bill Selected Reserve benefits, any eligible kickers will only be payable under that benefit.

**Note:** Your service branch determines your eligibility for a kicker, not VA. If you leave the Selected Reserve or your kicker eligibility ends, it will no longer be payable under any benefit.

{USE WHEN ELECTION WAS NOT MADE & NO KICKER EXISTS}

We have not made an election to give up benefits under any education program at this time to preserve your potential eligibility under the Montgomery GI Bill Selected Reserve. Your benefits under both programs will be limited to the 48-month cap for combining education benefits.

**Note:** Your service branch determines your eligibility for the Montgomery GI Bill Selected Reserve, not VA. If you leave the Selected Reserve your eligibility for that program will end even if you have remaining benefits.

## What You Can Do

If you wish to change the coordination of your benefits, send us written notice. If you need to make an election to give up your benefits under the Montgomery GI Bill Selected Reserve, please include a statement indicating that you would like to give up that benefit and the effective date of your election.

You may mail your request to the address at the top of this letter or, you may notify VA online through **Ask VA** at https://ask.va.gov.

# 2024 RUDISILL Attachment B – Ch30 and Ch33 One Period of Service

## Your Potential Eligibility Under Multiple Education Benefits

A recent decision made by the United States Supreme Court has changed VA's interpretation of Section 3327 (h) of Title 38, United States Code. The new interpretation allows some beneficiaries more flexibility in the coordination of their VA Education benefit programs.

The new ruling allows beneficiaries with multiple periods of qualifying active duty service to potentially use individual periods of service to establish benefits under both the Montgomery GI Bill Active Duty and the Post-9/11 GI Bill. Our records indicate that you only have one period of qualifying active duty service.

Generally, an individual education benefit program includes 36 months of benefits. Beneficiaries who are eligible for multiple VA Education benefits are subject to a cap of 48 months of benefits paid under any combination of benefit programs. Additionally, if a beneficiary gives up eligibility for the Montgomery GI Bill Active Duty to establish their Post-9/11 GI Bill benefits, their initial Post-9/11 GI Bill benefits will be limited the amount of Montgomery GI Bill Active Duty benefits they had remaining on the effective date of their election.

## Regarding Your Election

In most cases, an election to give up benefits under another education benefit program is no longer needed to establish eligibility under the Post-9/11 GI Bill. A voluntary election to give up your benefits under the Montgomery GI Bill Active Duty may be considered when deciding how to coordinate your benefits. Please review the following information when making this decision.

{USE WHEN AN ELECTION WAS RECEIVED}

Your application included your election to give up your eligibility under the Montgomery GI Bill Active Duty, effective {insert date}.

{USE WHEN NO ELECTION WAS RECEIVED}

Your application did not include an election to give up your eligibility under the Montgomery GI Bill Active Duty to establish your eligibility under the Post-9/11 GI Bill. Based on your service records, no election is required.

## What We Did

{USE WHEN ELECTION WAS REQUIRED AND ACCEPTED}

We have processed your election, so no Montgomery GI Bill Active Duty benefits can be paid after effective date of your election.

As a result of your election, your benefits under the Post-9/11 GI Bill are affected as follows:

- Your Post-9/11 GI Bill benefits were established with {XX} months and {XX} days of original benefits, which is equal the amount of your remaining Montgomery GI Bill Active Duty benefits on the effective date of your election.
- If you are eligible for a Montgomery GI Bill Active Duty kicker, it may be paid with your Post-9/11 GI Bill benefits.
- You may be eligible for a refund of some of the Montgomery GI Bill contributions you made when your Post-9/11 GI Bill benefits are exhausted.

**NOTE:** If your Montgomery GI Bill Active Duty benefits are expired or exhausted before establishing your Post-9/11 GI Bill benefits, no election will be needed.

Based on your service and VA Education records, this election was required to establish your eligibility under the Post-9/11 GI Bill. The election cannot be revoked if you would like your Post-9/11 GI Bill benefits to begin now. However, you are able to revoke your application for the Post-9/11 GI Bill until an election is no longer required.

To revoke your application and retain your Montgomery GI Bill Benefits, please send a statement within 30 days. Once you have been paid under the Post-9/11 GI Bill, revoking your application for that benefit may result in overpayments that must be recouped from your Montgomery GI Bill payments.

{USE WHEN ELECTION WAS NOT REQUIRED BUT ACCEPTED – CH30 KICKER EXISTS}

We have processed your election, so no Montgomery GI Bill Active Duty benefits can be paid after effective date of your election.

As a result of your election, your benefits under the Post-9/11 GI Bill are affected as follows:

- Your Post-9/11 GI Bill benefits were established with {XX} months and {XX} days of original benefits, which is equal the amount of your remaining Montgomery GI Bill Active Duty benefits on the effective date of your election.
- If you are eligible for a Montgomery GI Bill Active Duty kicker, it may be paid with your Post-9/11 GI Bill benefits.
- You may be eligible for a refund of some or all of the Montgomery GI Bill contributions you made when your Post-9/11 GI Bill benefits are exhausted.

Based on your service records, you are not required to give up a benefit to establish your eligibility under the Post-9/11 GI Bill, but we found that you are eligible for a kicker under the Montgomery GI Bill Active Duty.

You may choose to revoke this election to give up your Montgomery GI Bill Active Duty benefits. This would allow you to retain eligibility under that benefit.

Revoking your election will affect your Post-9/11 GI Bill benefits as follows:

- Your Post-9/11 GI Bill benefits will not be limited to the amount of your remaining Montgomery GI Bill Active Duty benefits, but you can use no more than 48 months

of benefits under any combination of benefit programs.

- If you were eligible for a Montgomery GI Bill Active Duty kicker, your Montgomery GI Bill Active Duty kicker will not be paid with your Post-9/11 GI Bill benefits. Your kicker can only be paid with your Montgomery GI Bill Active Duty benefits.
- You will not be eligible for a refund of the Montgomery GI Bill contributions you made when your Post-9/11 GI Bill benefits are exhausted.

**NOTE:** No service that began on or after August 1, 2011, can be used to establish both the Montgomery GI Bill Active Duty and the Post-9/11 GI Bill. If you do not serve an additional period of qualifying active duty service, either through a reenlistment or call-up service in the Selected Reserves, you may be barred from using both benefits.

{USE WHEN ELECTION WAS NOT REQUIRED AND NOT ACCEPTED – NO KICKER EXISTS}

We have not made an election to give up benefits under any education program at this time to preserve your potential eligibility under the Montgomery GI Bill Active Duty.

Our records indicate that you may complete multiple periods of qualifying active duty service in the future, so you may be able to use benefits under multiple VA education programs. **NOTE:** No service that began on or after August 1, 2011, can be used to establish both the Montgomery GI Bill Active Duty and the Post-9/11 GI Bill. If you do not serve an additional period of qualifying active duty service, either through a reenlistment or call-up service in the Selected Reserves, you may be barred from using both benefits.

You may wish to give up your Montgomery GI Bill Active Duty benefits. This can be done at any time. If you choose to give up that benefit, your benefits under the Post-9/11 GI Bill are effected as follows:

- Your Post-9/11 GI Bill benefits will be limited to the amount of your remaining Montgomery GI Bill Active Duty benefits on the effective date of your election.
- If you are eligible for a Montgomery GI Bill Active Duty kicker, it may be paid with your Post-9/11 GI Bill benefits.
- You may be eligible for a refund of some or all of the Montgomery GI Bill contributions you made when your Post-9/11 GI Bill benefits are exhausted.

If you complete multiple periods of qualifying active duty service and choose to retain both the Montgomery GI Bill Active Duty and the Post-9/11 GI Bill:

- Your benefits under both programs will be limited to the 48-month cap for combining education benefits.
- No Montgomery GI Bill Active Duty kicker can be paid under the Post-9/11 GI Bill.
- You will not be eligible for any refunds of your Montgomery GI Bill contributions.

**NOTE:** If you join the Selected Reserve, becoming eligible for a Montgomery GI Bill Selected Reserve kicker may result in additional considerations when deciding how to coordinate benefits between the three programs.

We have not made an election to give up benefits under any education program at this time to preserve your potential eligibility under the Montgomery GI Bill Active Duty.

Our records indicate that you may complete multiple periods of qualifying active duty service in the future, so you may be able to use benefits under multiple VA education programs. **NOTE:** No service that began on or after August 1, 2011, can be used to establish both the Montgomery GI Bill Active Duty and the Post-9/11 GI Bill. If you do not serve an additional period of qualifying active duty service, either through a reenlistment or call-up service in the Selected Reserves, you may be barred from using both benefits.

Additionally, our records indicate that you may be eligible for a kicker under the Montgomery GI Bill Active Duty. You may wish to give up your Montgomery GI Bill Active Duty benefits. This can be done at any time. If you choose to give up that benefit, your benefits under the Post-9/11 GI Bill are effected as follows:

- Your Post-9/11 GI Bill benefits will be limited to the amount of your remaining Montgomery GI Bill Active Duty benefits on the effective date of your election.
- If you are eligible for a Montgomery GI Bill Active Duty kicker, it may be paid with your Post-9/11 GI Bill benefits.
- You may be eligible for a refund of some or all of the Montgomery GI Bill contributions you made when your Post-9/11 GI Bill benefits are exhausted.

If you complete multiple periods of qualifying active duty service and choose to retain both the Montgomery GI Bill Active Duty and the Post-9/11 GI Bill:

- Your benefits under both programs will be limited to the 48-month cap for combining education benefits.
- No Montgomery GI Bill Active Duty kicker can be paid under the Post-9/11 GI Bill.
- You will not be eligible for any refunds of your Montgomery GI Bill contributions.

## What You Can Do

If you wish to change the coordination of your benefits, send us written notice. If you need to make an election to give up your benefits under the Montgomery GI Bill Active Duty or Selected Reserve, please include a statement indicating that you would like to give up that benefit and the effective date of your election.

You may mail your request to the address at the top of this letter or, you may notify VA online through **Ask VA** at https://ask.va.gov.

# 2024 RUDISILL Attachment C – Updated Alternative Election Language

## What We Did

Our records indicate that you only have one period of qualifying active duty service, and that period of service began before August 1, 2011. You used this service period to establish your eligibility under the Montgomery GI Bill Active Duty.

This service can be used to establish the Post-9/11 GI Bill, but it requires an election for you to give up your remaining Montgomery GI Bill Active Duty benefits to establish your eligibility.

We have made an **election on your behalf to relinquish** the Montgomery GI Bill Active Duty effective {INSERT EFFECTIVE DATE OF ELECTION}, to establish eligibility for Post-9/11 GI Bill benefits. No Montgomery GI Bill Active Duty benefits can be paid after that date.

As a result of your election, your benefits under the Post-9/11 GI Bill are effected as follows:

- Your Post-9/11 GI Bill benefits were established with {XX} months and {XX} days of original benefits, which is equal the amount of your remaining Montgomery GI Bill Active Duty benefits on the effective date of your election.
- If you are eligible for a Montgomery GI Bill Active Duty kicker, it may be paid with your Post-9/11 GI Bill benefits.
- You may be eligible for a refund of some or all of the Montgomery GI Bill contributions you made when your Post-9/11 GI Bill benefits are exhausted.

**NOTE:** If your Montgomery GI Bill Active Duty benefits are expired or exhausted before establishing your Post-9/11 GI Bill benefits, no election will be needed. In some cases, it is more advantageous revoke your application for the Post-9/11 GI Bill until an election is no longer required.

This election made on your behalf will be irrevocable after 30 days from the date of this letter. If you disagree with our actions, send us written notice within 30 days. You may mail your request to the address at the top of this letter or, you may notify VA online through **Ask VA** at https://ask.va.gov.

We made this election in accordance with Section 3327 (h) of Title 38, United States Code, which allows VA to make elections when an individual fails to make an election or makes an election that would negatively affect their benefits.

# 2024 RUDISILL Attachment D – Ch30 and Ch33 Multiple Periods of Service

## Your Potential Eligibility Under Multiple Education Benefits

A recent decision made by the United States Supreme Court has changed VA's interpretation of Section 3327 (h) of Title 38, United States Code. The new interpretation allows some beneficiaries more flexibility in the coordination of their VA Education benefit programs.

You have multiple periods of qualifying active duty service.

Service beginning before August 1, 2011, can be used to establish benefits under both the Montgomery GI Bill Active Duty and the Post-9/11 GI Bill.

Service beginning on or after August 1, 2011, cannot be used to establish both benefits, and if used for one benefit, it will be excluded from consideration when establishing the other benefit. This could bar you from benefits under one program or it could lower benefit level payable under the Post-9/11 GI Bill.

- **Example:** A beneficiary first entered active duty after August 1, 2011, and has two periods of qualifying service: initial enlistment for 3 years; reenlistment for an additional 2 years. They were paid under the Montgomery GI Bill Active Duty, based only on their first period of qualifying active duty service (initial enlistment for 3 years). That service cannot be used to establish or increase the benefit level payable under the Post-9/11 GI Bill. However, their additional service (reenlistment for 2 additional years) could be used to establish Post-9/11 GI Bill eligibility at the 80% benefit level.
- **Example:** A beneficiary has two periods of qualifying service, and they applied both periods towards the Post-9/11 GI Bill to qualify at the 100% benefit level. Neither service period can be used to establish the Montgomery GI Bill Active Duty.

Generally, an individual education benefit program includes 36 months of benefits. Beneficiaries who are eligible for multiple VA Education benefits are subject to a cap of 48 months of benefits paid under any combination of benefit programs. Additionally, if a beneficiary gives up eligibility for the Montgomery GI Bill Active Duty to establish their Post-9/11 GI Bill benefits, their initial Post-9/11 GI Bill benefits will be limited the amount of Montgomery GI Bill Active Duty benefits they had remaining on the effective date of their election.

## Regarding Your Election

In most cases, an election to give up benefits under another education benefit program is no longer needed to establish eligibility under the Post-9/11 GI Bill. A voluntary election to give up your benefits under the Montgomery GI Bill Active Duty may be considered when deciding how to coordinate your benefits. Please review the following information when making this decision.

{USE WHEN AN ELECTION WAS RECEIVED}

Your application included your election to give up your eligibility under the Montgomery GI Bill Active Duty, effective {insert date}. Based on your service records, this election is not required.

{USE WHEN NO ELECTION WAS RECEIVED}

Your application did not include an election to give up your eligibility under the Montgomery GI Bill Active Duty to establish your eligibility under the Post-9/11 GI Bill. Based on your service records, no election is required.

## What We Did

{USE WHEN ELECTION WAS ACCEPTED DUE TO INCREASED BENEFIT LEVEL}

We have processed your voluntary election, so no Montgomery GI Bill Active Duty benefits can be paid after effective date of your election.

As a result of your election, your benefits under the Post-9/11 GI Bill are affected as follows:

- Your Post-9/11 GI Bill benefits were established with {XX} months and {XX} days of original benefits, which is equal the amount of your remaining Montgomery GI Bill Active Duty benefits on the effective date of your election.
- Your service beginning before August 1, 2011, was used to establish your Post-9/11 GI Bill benefits. This increased the benefit level payable under that program.
- If you are eligible for a Montgomery GI Bill Active Duty kicker, it may be paid with your Post-9/11 GI Bill benefits.
- You may be eligible for a refund of some of the Montgomery GI Bill contributions you made when your Post-9/11 GI Bill benefits are exhausted.

Based on your service records, you are not required to give up a benefit to establish your eligibility under the Post-9/11 GI Bill. You may choose to revoke this election to give up your Montgomery GI Bill Active Duty benefits. This would allow you to retain eligibility under that benefit.

Revoking your election will affect your Post-9/11 GI Bill benefits as follows:

- Your Post-9/11 GI Bill benefits will not be limited to the amount of your remaining Montgomery GI Bill Active Duty benefits, but you can use no more than 48 months of benefits under any combination of benefit programs.
- The service used to establish your Montgomery GI Bill Active Duty will be excluded from your Post-9/11 GI Bill record, and will decrease the benefit level payable.
- If you were eligible for a Montgomery GI Bill Active Duty kicker, your Montgomery GI Bill Active Duty kicker will not be paid with your Post-9/11 GI Bill benefits. Your kicker can only be paid with your Montgomery GI Bill Active Duty benefits.
- You will not be eligible for a refund of the Montgomery GI Bill contributions you made when your Post-9/11 GI Bill benefits are exhausted.

{USE WHEN ELECTION WAS ACCEPTED – CH30 KICKER EXISTS}

We have processed your voluntary election, so no Montgomery GI Bill Active Duty benefits can be paid after effective date of your election.

As a result of your election, your benefits under the Post-9/11 GI Bill are affected as follows:

- Your Post-9/11 GI Bill benefits were established with {XX} months and {XX} days of original benefits, which is equal the amount of your remaining Montgomery GI Bill Active Duty benefits on the effective date of your election.
- If you are eligible for a Montgomery GI Bill Active Duty kicker, it may be paid with your Post-9/11 GI Bill benefits.
- You may be eligible for a refund of some or all of the Montgomery GI Bill contributions you made when your Post-9/11 GI Bill benefits are exhausted.

Based on your service records, you are not required to give up a benefit to establish your eligibility under the Post-9/11 GI Bill, but we found that you are eligible for a kicker under the Montgomery GI Bill Active Duty. You must elect to forfeit Montgomery GI Bill eligibility to receive your Montgomery GI Bill Active Duty kicker payment with your Post-9/11 GI Bill.

You may choose to revoke this election to give up your Montgomery GI Bill Active Duty benefits. This would allow you to retain eligibility under that benefit.

Revoking your election will affect your Post-9/11 GI Bill benefits as follows:

- Your Post-9/11 GI Bill benefits will not be limited to the amount of your remaining Montgomery GI Bill Active Duty benefits, but you can use no more than 48 months of benefits under any combination of benefit programs.
- The service used to establish your Montgomery GI Bill Active Duty will be excluded from your Post-9/11 GI Bill record, and may decrease the benefit level payable.
- If you were eligible for a Montgomery GI Bill Active Duty kicker, your Montgomery GI Bill Active Duty kicker will not be paid with your Post-9/11 GI Bill benefits. Your kicker can only be paid with your Montgomery GI Bill Active Duty benefits.
- You will not be eligible for a refund of the Montgomery GI Bill contributions you made when your Post-9/11 GI Bill benefits are exhausted.

**NOTE:** No service that began on or after August 1, 2011, can be used to establish both the Montgomery GI Bill Active Duty and the Post-9/11 GI Bill. If you do not serve an additional period of qualifying active duty service, either through a reenlistment or call-up service in the Selected Reserves, you may be barred from using both benefits.


{USE WHEN ELECTION WAS NOT ACCEPTED – NO KICKER EXISTS}

We have not made an election to give up benefits under any education program at this time to preserve your potential eligibility under the Montgomery GI Bill Active Duty.

Our records indicate that you have multiple periods of qualifying active duty service, so you

may be able to use benefits under multiple VA education programs. **NOTE:** No service that began on or after August 1, 2011, can be used to establish both the Montgomery GI Bill Active Duty and the Post-9/11 GI Bill.

You may wish to voluntarily give up your Montgomery GI Bill Active Duty benefits. This can be done at any time. If you choose to give up that benefit, your benefits under the Post-9/11 GI Bill are affected as follows:

- Your Post-9/11 GI Bill benefits will be limited to the amount of your remaining Montgomery GI Bill Active Duty benefits on the effective date of your election.
- If you are eligible for a Montgomery GI Bill Active Duty kicker, it may be paid with your Post-9/11 GI Bill benefits.
- You may be eligible for a refund of some or all of the Montgomery GI Bill contributions you made when your Post-9/11 GI Bill benefits are exhausted.

If you choose to retain both the Montgomery GI Bill Active Duty and the Post-9/11 GI Bill:

- Your benefits under both programs will be limited to the 48-month cap for combining education benefits.
- No Montgomery GI Bill Active Duty kicker can be paid under the Post-9/11 GI Bill.
- You will not be eligible for any refunds of your Montgomery GI Bill contributions.

{USE WHEN ELECTION WAS NOT RECEIVED AND KICKER EXISTS OR BENEFIT LEVEL INCREASES WITH ELECTION}

We have not made an election to give up benefits under any education program at this time to preserve your potential eligibility under the Montgomery GI Bill Active Duty.

Our records indicate that you have completed multiple periods of qualifying active duty service, so you may be able to use benefits under multiple VA education programs.

Additionally, our records indicate that you may be eligible for a kicker under the Montgomery GI Bill Active Duty or that your benefit level under the Post-9/11 GI Bill may be increased by making an election. You may wish to voluntarily give up your Montgomery GI Bill Active Duty benefits. This can be done at any time. If you choose to give up that benefit, your benefits under the Post-9/11 GI Bill are affected as follows:

- Your Post-9/11 GI Bill benefits will be limited to the amount of your remaining Montgomery GI Bill Active Duty benefits on the effective date of your election.
- Any service beginning before August 1, 2011, can be used to establish your Post-9/11 GI Bill benefits. This may increase the benefit level payable under that program.
- If you are eligible for a Montgomery GI Bill Active Duty kicker, it may be paid with your Post-9/11 GI Bill benefits.
- You may be eligible for a refund of some or all of the Montgomery GI Bill contributions you made when your Post-9/11 GI Bill benefits are exhausted.

If you choose to retain both the Montgomery GI Bill Active Duty and the Post-9/11 GI Bill:

- Your benefits under both programs will be limited to the 48-month cap for combining education benefits.
- The service used to establish your Montgomery GI Bill Active Duty will be excluded from your Post-9/11 GI Bill record.
- No Montgomery GI Bill Active Duty kicker can be paid under the Post-9/11 GI Bill.
- You will not be eligible for any refunds of your Montgomery GI Bill contributions.

## What You Can Do

If you wish to change the coordination of your benefits, send us written notice. If you need to make an election to give up your benefits under the Montgomery GI Bill Active Duty or Selected Reserve, please include a statement indicating that you would like to give up that benefit and the effective date of your election.

You may mail your request to the address at the top of this letter or, you may notify VA online through **Ask VA** at https://ask.va.gov.

## Your Potential Eligibility Under Multiple Education Benefits

A recent decision made by the United States Supreme Court has changed VA's interpretation of Section 3327 (h) of Title 38, United States Code. The new interpretation allows beneficiaries more flexibility in the coordination of their VA Education benefit programs.

If you have multiple periods of qualifying active duty service, you may potentially use individual periods of service to establish benefits under both the Montgomery GI Bill Active Duty and the Post-9/11 GI Bill. Service beginning before August 1, 2011, can be used to establish benefits under both the Montgomery GI Bill Active Duty and the Post-9/11 GI Bill. Service beginning on or after August 1, 2011, cannot be used to establish both benefits. If a period of service is used for one benefit, it will be excluded from consideration when establishing the other benefit. This could bar you from benefits under one program or it could lower benefit level payable under the Post-9/11 GI Bill.

- **Example:** A beneficiary first entered active duty after August 1, 2011, and has two periods of qualifying service:  initial enlistment for 3 years; reenlistment for an additional 2 years.  They were paid under the Montgomery GI Bill Active Duty, based only on their first period of qualifying active duty service (initial enlistment for 3 years). That service cannot be used to establish or increase the benefit level payable under the Post-9/11 GI Bill. However, their additional service (reenlistment for 2 additional years) could be used to establish Post-9/11 GI Bill eligibility at the 80% benefit level.
- **Example:** A beneficiary has two periods of qualifying service, and applied both periods towards the Post-9/11 GI Bill to qualify at the 100% benefit level.  Neither service period can be used to establish the Montgomery GI Bill Active Duty.

Generally, an individual education benefit program includes 36 months of benefits. Beneficiaries who are eligible for multiple VA Education benefits are subject to a cap of 48 months of benefits paid under any combination of benefit programs. Additionally, if a beneficiary gives up eligibility for the Montgomery GI Bill Active Duty to establish their Post-9/11 GI Bill benefits, their initial Post-9/11 GI Bill benefits will be limited the amount of Montgomery GI Bill Active Duty benefits they had remaining on the effective date of their election.

## Regarding Your Election

In most cases, an election to give up benefits under another education benefit program is no longer needed to establish eligibility under the Post-9/11 GI Bill. A voluntary election to give up your benefits under the Montgomery GI Bill Active Duty or Montgomery GI Bill Selected Reserve may be considered when deciding how to coordinate your benefits. Please review the following information when making this decision.

[INSERT WHEN ELECTION WAS RECEIVED] Your application included your election to give up your eligibility under the Montgomery GI Bill {Active Duty/Selected Reserve},

effective {insert date}. Based on your service records, this election was not required to establish your eligibility under the Post-9/11 GI Bill.

[INSERT WHEN NO ELECTION WAS RECEIVED] Your application did not include an election to give up your eligibility under another VA Education Benefit to establish your eligibility under the Post-9/11 GI Bill. Based on your service records, no election is required.

## What We Found

Our records indicate that you are potentially eligible for the Montgomery GI Bill Active Duty, Montgomery GI Bill Selected Reserve, and the Post-9/11 GI Bill. Additionally, we have found the following information about your education benefits:

{USE TO SHOW AMOUNT OF CH30 BENEFITS REMAINING}

- You have {XX} months and {XX} days of benefits remaining under the Montgomery GI Bill Active Duty program.

{USE WHEN 1606 KICKER EXISTS}

- You have a kicker under the Montgomery GI Bill Selected Reserve.

{USE WHEN CH30 KICKER EXISTS}

- You have a kicker under the Montgomery GI Bill Active Duty.

{USE WHEN CH30 PRE-8/1/11 SERVICE WILL INCREASE BENEFIT LEVEL}

- You have service beginning before August 1, 2011, that can be used to establish your Post-9/11 GI Bill benefits by making an election to give up your Montgomery GI Bill Active Duty benefits. This may increase the benefit level payable under that program.

{USE WHEN CH30 REFUND MAY BE PAYABLE IF ELECTION IS MADE}

- You have made contributions into the Montgomery GI Bill Active Duty program that may be refundable if you elect to give up your Montgomery GI Bill Active Duty benefits.

## What We Did

We have not made an election to give up benefits under any education program at this time because you have multiple options for coordinating your benefits.

You may wish to make a voluntary election to give up your Montgomery GI Bill Selected Reserve benefits. This can be done at any time. If you choose to give up that benefit, you may be paid for Montgomery GI Bill Selected Reserve Kicker under the Post-9/11 GI Bill, if eligible. If you choose to retain your Montgomery GI Bill Selected Reserve benefits, any kickers associated with that benefit are only payable under that benefit.

OR

You may wish to give up your Montgomery GI Bill Active Duty benefits. This can be done at any time. If you choose to give up that benefit, your benefits under the Post-9/11 GI Bill are affected as follows:

- Your Post-9/11 GI Bill benefits will be limited to the amount of your remaining Montgomery GI Bill Active Duty benefits on the effective date of your election.
- Any service beginning before August 1, 2011, can be used to establish your Post-9/11 GI Bill benefits. This may increase the benefit level payable under that program.
- If you are eligible for a Montgomery GI Bill Active Duty kicker, it may be paid with your Post-9/11 GI Bill benefits.
- You may be eligible for a refund of some or all of the Montgomery GI Bill contributions you made when your Post-9/11 GI Bill benefits are exhausted.

If you choose to retain both the Montgomery GI Bill Active Duty and the Post-9/11 GI Bill:

- Your Post-9/11 GI Bill benefits will only be limited by the 48-month rule and not your remaining Montgomery GI Bill Active Duty benefits.
- The service used to establish your Montgomery GI Bill Active Duty will be excluded from your Post-9/11 GI Bill record.
- No Montgomery GI Bill Active Duty kicker can be paid under the Post-9/11 GI Bill.
- You will not be eligible for any refunds of your Montgomery GI Bill contributions.

You cannot give up more than one benefit to establish the Post-9/11 GI Bill. Additionally, you are not required to give up any benefits.

## What You Can Do

If you wish to change the coordination of your benefits, send us written notice. If you need to make an election to give up your benefits under either the Montgomery GI Bill Active Duty or Selected Reserve, please include which benefit you would like to give up and the effective date of your election.

You may mail your request to the address at the top of this letter or, you may notify VA online through **Ask VA** at https://ask.va.gov.

## 13.42  Supplemental Claims Review Per Rudisill V. McDonough Ruling

**Election to Receive Post-9/11 GI Bill (PGIB) is Required When Coordination of Montgomery GI Bill (MGIB) & PGIB is Necessary**

On April 16, 2024, the Supreme Court of the United States issued its opinion on case 22-888, Rudisill v. McDonough, Secretary of Veterans Affairs. The case was previously heard by the United States Court of Appeals for Veterans Claims on May 2, 2018, and the United States Court of Appeals for the Federal Circuit on December 19, 2020. The case was formerly known as B.O. (a pseudonym) v. Wilkie.

*The Supreme Court held that an election to receive Post-9/11 GI Bill (PGIB/Chapter 33) benefits under 38 U.S.C. § 3327 is only required when "coordination" of Montgomery GI Bill – Active Duty (MGIB/Chapter 30) and PGIB entitlement is necessary under § 3322(d).*

Only beneficiaries with a single period of qualifying active-duty service which began prior to August 1, 2011, who have previously used entitlement under MGIB, and remain eligible for MGIB benefits as of the date of their application for PGIB, will be required to make an election under § 3327 to establish PGIB benefits.

All other beneficiaries, including those with a single period of qualifying active-duty service which began on or after August 1, 2011, may make a voluntary election under § 3327 to receive a Montgomery GI Bill – Selected Reserve (MGIB-SR/Chapter 1606) or MGIB kicker under § 3316, and/or a refund of MGIB contributions under § 3327(f). A voluntary election may also be made to credit service that began prior to August 1, 2011, previously used to establish MGIB, to increase the PGIB benefit level.  This voluntary election can be made at any time and the lack of said election is not a bar to eligibility under PGIB.

**A. Provisions**

The Court's ruling invalidates VA's statutory interpretation that a Veteran who qualifies for both the MGIB and PGIB *based on multiple periods of service* must forfeit eligibility for MGIB when they start using PGIB. It also invalidates VA's statutory interpretation that such a person's PGIB is limited to the months of entitlement remaining under MGIB.

- If a Veteran or service member *completed at least two periods of service*—one that qualifies for the Montgomery GI Bill (MGIB-Active Duty or MGIB/SR-Selected Reserve) and a separate period of service that qualifies for the Post-9/11 GI Bill (PGIB)—they may be able to receive additional GI Bill benefits due to the Rudisill decision.

The issue decided in the case _pertains to individuals with multiple periods of active-duty service_ who have used MGIB benefits and relinquished MGIB benefits for the PGIB, _and_ whether their PGIB entitlement is limited to the remaining MGIB entitlement _or_ the 48-month rule. **_The Supreme Court found that the 48-month rule applies in this scenario._**

- Veterans who have _two or more distinct (separate) periods of service that qualifies them for_ **both** _MGIB and PGIB may use benefits under both programs._ (All entitlement used under MGIB, MGIB-SR, and PGIB is calculated in/deducted from the 48-month entitlement maximum.)

The Secretary of Veterans Affairs has determined similarly circumstanced Veterans to Mr. Rudisill, who were previously required to relinquish their MGIB eligibility to establish PGIB eligibility, and who have requested to nullify their previous relinquishment (or had their previous relinquishment nullified by VA), are eligible for an extended MGIB and/or PGIB delimiting date under the authority of §3031(i).

- The purpose of this extension is to afford Veterans an opportunity to use restored benefits which were previously inaccessible or reduced.

**B. Applicability**

_The new Rudisill interpretation changes how_ **multiple periods** _of qualifying military service impacts benefits earned. This allows some beneficiaries more flexibility in the coordination of their VA Education benefit programs_ **when:**

1. _Multiple periods of qualifying active-duty service:_

   Separate, distinct periods of service may qualify for **both** MGIB and PGIB benefits, no relinquishment is needed.

2. _One period of qualifying service – and that one period began_ _before_ _August 1, 2011:_

   If MGIB was used prior to PGIB, there was MGIB entitlement remaining at the time of PGIB application, and service was used to establish both MGIB and PGIB, then MGIB relinquishment is needed.

3. _Multiple periods of qualifying service – and at least one period began_ _before_ _August 1, 2011:_

   If MGIB was used prior to PGIB, there was MGIB entitlement remaining at the time of PGIB application, and service was used to establish both MGIB and PGIB, then MGIB relinquishment is needed.

4. _Service periods that began_ _on or after_ _August 1, 2011:_

   This service cannot be used to establish both MGIB and PGIB benefits.

5. _Kicker and MGIB contributions refund:_

Relinquishment of MGIB is required to receive the MGIB kicker and/or contributions refund. Relinquishment of MGIB-SR is needed to receive the MGIB-SR kicker.

6. Extension of MGIB or PGIB delimiting date:

The purpose of this extension is to afford Veterans an opportunity to use restored benefits which were previously inaccessible or reduced.

For eligible Veterans who previously had to forfeit their MGIB benefits to use PGIB:

- If eligible for MGIB, VA will recalculate their MGIB delimiting date and return time after the election was made equal to the amount of time which would have been afforded them (had the benefit not been relinquished).

- For eligible Veterans whose *PGIB benefits were limited to the amount remaining under MGIB at the time of relinquishment,* VA will restore their remaining entitlement then recalculate their delimiting date and return time after the election was made equal to the amount of time which would have been afforded them (had the entitlement not previously expired).

- Both extensions will be calculated for a period equal in length to the time elapsed between the date of the original relinquishment and the relevant chapter's delimiting date or the date of issuance of the new Certificate of Eligibility (whichever is earlier), plus 90 days.

**C. VCE Review Procedures**

**AUTHORIZATION NOTE:** Single signature authority is at the discretion of the Education Officer except where noted in **M22-4, Part 3, Chapter 1, Sub-chapter 4, 1.19 Single Signature Authority**. When service, eligibility, and/or entitlement is unchanged, a second signature is not required (e.g., "Rudisill N/A" – no re-enlistment, did not relinquish Chapter 30 MGIB-AD, no longer eligible for Chapter 1606 MGIB-SR, used 48 months, etc.).

VCEs should use the appropriate process flow detailed below when reviewing claims for re-adjudication.

(**NOTE**: For more information on uploading letters into DGI, see **M22-4, Part 12, Chapter 6, Sub-chapter 12, 12.06** Letter Upload Functionality.)

**Veteran Relinquished MGIB-SR/Chapter 1606**

**a. Veteran is no longer eligible for MGIB-SR *or* Veteran is still eligible for MGIB-SR and received an MGIB-SR kicker under PGIB:**

1. Establish a Work Product in DGI with description, "#RUD". Do not enter additional text in the description field, as the field will be used for tracking purposes.

2. Do not remove the relinquishment.

3. Suppress the DGI-generated letter and remove the body, except for the salutation, Certificate of Eligibility section, and enclosures.

4. Open the "RUD1606 RETAINED LETTER" and paste into the DGI-generated letter.

   - Retain the enclosures generated by DGI, including the If You Need Help and appeal information.

5. Save the edited notification letter.

6. Capture a VA Form 119e with "Rudisill" included in the statement box into the TIMS folder. No other fields are required to be populated. Remark the document, "RUDISILL".

7. Route the claim for authorization, if appropriate, or authorize the Work Product and upload the edited notification letter to DGI.

**b. Veteran is still eligible for MGIB-SR, but has never received an MGIB-SR kicker under PGIB:**

1. Establish a Work Product in DGI with description, "#RUD". Do not enter additional text in the description field, as the field will be used for tracking purposes.

2. Remove the relinquishment. (see INSTRUCTIONS FOR REMOVING BENEFIT RELINQUISHED attachment) You MUST re-input any/all entitlement used under MGIB-SR but DO NOT relinquish the benefit.

3. Suppress the DGI-generated letter and remove the body, except for the salutation, Certificate of Eligibility section, and enclosures.

4. Open the "RUD1606 REVERSED LETTER" and paste into the DGI-generated letter.

   - Retain the enclosures generated by DGI, including the If You Need Help and appeal information.

5. Save the edited notification letter.

6. Capture a VA Form 119e with "Rudisill" included in the statement box into the TIMS folder. No other fields are required to be populated. Remark the document, "RUDISILL".

7. Route the claim for authorization, if appropriate, or authorize the Work Product and upload the edited notification letter to DGI.

## Veteran Relinquished MGIB

1. **Capture VIS (service and reenlistment data).** Personnel status must be captured even if blank.

> *Review VIS for distinct enlistment periods, call-ups, and conditional discharges due to immediate re-enlistment. See the System Advisory, "[VIS Updates Installed on December 1, 2020](#)", dated December 3, 2020, for more information on how to view re-enlistment data in the VIS application.*

2. **Only one period of qualifying service – and that one period began before August 1, 2011?**

> If no, go to 3.
>
> If yes, and <u>all</u> below are true, election is <u>required</u>, go to 5a. If <u>any</u> are <u>not</u> true, go to 4.

- MGIB was used before PGIB, and
- Eligible for MGIB at the time of PGIB application; and
- One period of qualifying service began before August 1, 2011; and
- That one period was used to establish MGIB and PGIB.

3. **Are there multiple periods of qualifying service – and at least one period began before August 1, 2011?**

> If no, go to 4.
>
> If yes, and <u>all</u> below are true, election is <u>retained</u>, go to 5b. If <u>any</u> are <u>not</u> true, go to 4.

- MGIB was used before PGIB, and
- Eligible for MGIB at the time of PGIB application; and
- Same service that began before August 1, 2011, was used to establish both MGIB and PGIB. **

> *** How to check if service was used to establish both MGIB and PGIB: In DGI, mark the shortest or most advantageous period of service, used to establish MGIB as "non-qualifying" "used for other benefit" to ascertain if service impacts PGIB eligibility. If the PGIB benefit level changes or debts are created, the service was used to establish both MGIB and PGIB; change back to "qualifying". ***

> *Example:*

> *08-01-07 to 07-31-09 (2-year enlistment)*

*08-01-16 to 07-31-17 (1-year call-up)*

*MGIB established based on 08-01-07 to 07-31-09 (2-year enlistment).*

*PGIB established based on 08-01-07 to 07-31-09 and 08-01-16 to 07-31-17.*

*Marking 08-01-07 to 07-31-09 as "non-qualifying" would decrease PGIB benefit level.*

*Service that began prior to 08-01-11 was used to establish both MGIB and PGIB.*

4. **Review the following:**

   **a. Is Veteran eligible for a <u>kicker</u>?**  If yes, election is retained, go to 5b.

   **b. Is Veteran potentially <u>eligible</u> for the MGIB contribution <u>refund</u> once PGIB exhausts, and <u>eligible</u> for <u>MGIB</u>?**  If yes, election is <u>reversed</u>, go to 5c.

   *To check MGIB contribution refund eligibility, see <u>M22-4, Part XII, Sub-Chapter 4.6, 6.01</u>.  For example, the Veteran is not the last payee or did not make a MGIB contribution.*

   *To check MGIB eligibility:*

   *Review if MGIB entitlement exhausted or 48 months of education benefits has exhausted.*

   *Service that began before August 1, 2011, that was first used to establish PGIB cannot be used to establish MGIB.  Service that began on or after August 1, 2011, that was used to establish PGIB cannot be used to establish MGIB.*

   *Qualifying length is 2 continuous years (2-year enlistment) or 3 continuous years (3 or more year enlistment).*

   *Exceptions:*

   1. COG (2-year enlistment) served 20 months.

   2. COG (3 or more year enlistment) served 30 months.

   3. EPTS, RIF, HDSP, CIWD, DIS served at least a month.

   4. Category 3 Involuntary/Voluntary separation served at least a month.

*Mark service needed to establish MGIB (does not have to be initial enlistment) - in DGI as "non-qualifying" "used for other benefit".  If the PGIB benefit level changes or debts are created, the service is required to establish PGIB and cannot be used to establish MGIB; change back to "qualifying".*

**c.  Is Veteran potentially <u>eligible</u> for MGIB contribution <u>refund</u> once PGIB exhausts, but <u>not eligible</u> for <u>MGIB</u>?**  If yes, election is <u>retained</u>, go to 5b.

*To check MGIB contribution refund eligibility, see **<u>M22-4, Part XII, Sub-Chapter 4.6, 6.01</u>**.  For example, the Veteran is not the last payee or did not make a MGIB contribution.*

*To check MGIB eligibility:*

*Review if MGIB entitlement exhausted or 48 months of education benefits has exhausted.*

*Service that began before August 1, 2011, that was first used to establish PGIB cannot be used to establish MGIB.  Service that began on or after August 1, 2011, that was used to establish PGIB cannot be used to establish MGIB.*

*Qualifying length is 2 continuous years (2-year enlistment) or 3 continuous years (3 or more year enlistment).  Exceptions:*

- *COG (2-year enlistment) served 20 months.*

- *COG (3 or more year enlistment) served 30 months.*

- *EPTS, RIF, HDSP, CIWD, DIS served at least a month.*

- *Category 3 Involuntary/Voluntary separation served at least a month.*

*Mark service needed to establish MGIB (does not have to be initial enlistment) - in DGI as "non-qualifying" "used for other benefit".  If the PGIB benefit level changes or debts are created, the service is required to establish PGIB and cannot be used to establish MGIB; change back to "qualifying".*

**d. Is Veteran <u>not potentially eligible</u> for MGIB contribution <u>refund</u>?** Election is <u>reversed</u>, go to 5c.

> *To check MGIB contribution refund eligibility, see <u>**M22-4, Part XII, Sub-Chapter 4.6, 6.01**</u>. For example, the Veteran is not the last payee or did not make a MGIB contribution.*

5**. Re-adjudicate the previous relinquishment decision.**

**a. ELECTION REQUIRED**

1. Open a Work Product for the beneficiary with the description "#RUD".

2. Do not remove the relinquishment.

3. Suppress the DGI-generated letter and remove the body, except for the salutation, Certificate of Eligibility section, and enclosures.

4. Open the "RUD REQUIRED LETTER" and paste into the DGI-generated letter.

   - Retain the enclosures generated by DGI, including the If You Need Help and appeal information.

5. Save the edited notification letter.

6. Capture a VA Form 119e with "Rudisill" included in the statement box into the TIMS folder. No other fields are required to be populated. Remark the document, "RUDISILL".

7. If an MGIB contribution refund is due but has not yet been paid due to these changes, issue the refund using existing procedures.

8. Route the claim for authorization, if appropriate, or authorize the Work Product and upload the edited notification letter to DGI.

**b. ELECTION RETAINED**

1. Open a Work Product for the beneficiary with the description "#RUD".

2. Do not remove the relinquishment.

3. Suppress the DGI-generated letter and remove the body, except for the salutation, Certificate of Eligibility section, and enclosures.

4. Open the "RUD30 RETAINED LETTER" and paste into the DGI-generated letter.

   - Retain the enclosures generated by DGI, including the If You Need Help and appeal information.

5. Save the edited notification letter.

6. Capture a VA Form 119e with "Rudisill" included in the statement box into the TIMS folder. No other fields are required to be populated. Remark the document, "RUDISILL".

7. If an MGIB contribution refund is due but has not yet been paid due to these changes, issue the refund using existing procedures.

8. Route the claim for authorization, if appropriate, or authorize the Work Product and upload the edited notification letter to DGI.

## c. ELECTION REVERSED

1. Open a Work Product for the beneficiary with the description "#RUD".

2. Remove the relinquishment. (see INSTRUCTIONS FOR REMOVING BENEFIT RELINQUISHED attachment) You MUST re-input the PGIB start date, and any/all entitlement used under MGIB but DO NOT relinquish the benefit. **NOTE**: If during review, it's determined that STEM WAS PAID, and the claimant is going to be awarded more PGIB, please route those claims to the **STEM Buffalo queue** with **RUDSTEM** in the facility code**.**

3. Suppress the DGI-generated letter and remove the body, except for the salutation, Certificate of Eligibility section, and enclosures.

4. Open the "RUD30 REVERSED LETTER" and paste into the DGI-generated letter.

   - Retain the enclosures generated by DGI, including the If You Need Help and appeal information.

5. If Veteran meets the basic requirements for MGIB eligibility: process the MGIB delimiting date extension per section D. (Add required information to the MGIB COE letter)

6. If more PGIB entitlement is restored after removal of relinquishment: process the PGIB delimiting date extension per section D. (Add required information to the PGIB DGI letter).

7. Ensure that the appeal rights and enclosures are correctly placed.

8. Save the edited notification letter.

9. Capture a VA Form 119e with "Rudisill" included in the statement box into the TIMS folder. No other fields are required to be populated. Remark the document, "RUDISILL".

10. Route the claim for authorization, if appropriate, or authorize the Work Product and upload the edited notification letter to DGI.

NOTE: If the MGIB contribution refund has already been paid, VA will not create a debt for the previously refunded amount and it is not an Administrative Error.

**Rudisill Request Issues:**

1. **Working RPO list:**
   - If previously denied due to <u>delimiting date or entitlement exhaust</u>: Follow applicable review steps in *Section C. VCE Review Procedures*.
   - If previously denied due to <u>service</u> (still not eligible): Place a note in TIMS stating: "Reviewed for Rudisill and still not eligible, NAN", create no action WP in DGI with "#RUD" as the description for tracking purposes, and suppress DGI letters.

2. **VA Form 22-1995R:**

   - Follow *Procedural Advisory: Streamlining*.

**TOE Claims**

If the request is for benefits under the Transfer of Entitlement (TOE) provision:

1. **TOE (Spouse or Dependent)**

   a. Follow the scenario which is applicable to the veteran sponsor.

   b. After re-adjudication of the relinquishment, if there is additional entitlement available to the Veteran:

      i. Review the current TOE allocations in DGI, compare the DGI value to the current allocations on the veteran's VIS report, and adjust DGI accordingly.

         1. If a TOE beneficiary gains additional entitlement because of the Veteran re-adjudication, open a Work Product for the beneficiary with the description "#RUD". Authorize additional benefits and/or issue a COE to the beneficiary, as applicable.

2. If a TOE beneficiary does not gain additional entitlement, a beneficiary Work Product is not necessary.

c. Ensure proper notification is provided to the veteran, as described in the relevant section of the Veteran procedures.

## D. Extended Delimiting Date Procedures

VA Secretarial authority to extend delimiting dates under 38 USC 3031(i) for Rudisill expires on October 1, 2030. Individuals required to file a Rudisill review claim, filing after October 1, 2030, may use benefits according to normal delimiting date (time limit) calculations.

VCEs should use the appropriate process flow detailed below when extending a delimiting date under MGIB and/or PGIB:

**MGIB Extensions:**

1. Ensure MGIB was relinquished and subsequently the relinquishment was revoked (reversed).

2. Ensure service data entered on the Benefits Delivery Network (BDN) 310 screen is accurate as of the processing date, including the addition of any qualifying active-duty period of 90 days or greater in length. **NOTE:** Follow guidance as detailed in step 4 (below) when the length of extension *is capped at 120 months.*

3. Using the attached job aid, calculate the extended delimiting date.

a. Ensure that the delimiting date displayed on the 310 screen, after adjustment in step 2, is entered into the job aid. **Note:** The decision date (current date) may not match the date the COE is issued, as authorization may be delayed.

b. Review TIMS for unpaid enrollment(s) that fall between the original MGIB Delimiting Date and Date of Decision:

- Determine payable periods. If payable, the earliest payable date will then become the start date/beginning date for correct calculation of the allowable delimiting date extension.

- Populate additional/required fields in the job aid. (i.e. input the beginning date of the unpaid enrollment term OR the applicable date to resume payments for previously interrupted/unpaid training).

c. Capture the completed job aid to the TIMS folder.

4. Enter the values from the "BDN 310 Screen Entry" section of the job aid into the appropriate fields on the 310 screen. Press Enter twice to exit the 310 screen and enter the 30M screen.

**NOTE:** When the length of extension on the Job Aid ***is capped at 120 months*** (even if the current delimiting date prior to extension is in the future) the final RAD date requires manipulation to reflect '10 years and 1 day prior to' the "From Date" entered in the "Delim Date Adj" section of the 310 screen (as reflected in the Job Aid). ***see QUICK GUIDE attachment for visual instructions***

**REMINDER: When the extension is capped at 120 months the 312 screen must be carefully reviewed *prior to authorization* to ensure that no debts for prior enrollment are created because of this RAD change. If debts are created, you must still add the 120 months and enter the "From Date" as instructed. However, DO NOT change the original RAD, instead allow BDN to calculate the extended delimiting date (even if it does not match the final JOB AID date) then Flash the file as follows:**

"Correct Delimiting Date is XX-XX-XXXX (as reflected in the Job Aid). DO NOT pay after this date. Suppress letters upon authorization. Manual Letters are required for all (current and future) awards with corrected delimiting date."

**Note:** (The details in this NOTE are not related to the instructions for manipulation of the RAD date (due to the 120 month maximum) as detailed above). Due to BDN's ability to internalize Gregorian calendar dates (leap years and 365-day year), the adjusted delimiting date may differ from the date provided in the Job Aid. If, after inputting the allowable months/days of the extension in BDN, the resulting date differs from the Job Aid's, accept BDN's adjusted delimiting date.

5. In the NEXT SCREEN field of the 30M screen, enter "COE".

6. On the COE screen, issue a generic COE by entering "X" in the "PRGM/SCHOOL NOT SPECIFIED" field.

7. On the COE screen, press the F10 key, then hold the Shift key and press the Tab key twice to the COE free-text field.

8. In the COE screen free text field, enter the following text: "Your eligibility period has been extended due to the Rudisill v. McDonough decision. (Authority of 38 USC 3031(i))".

   • If claimant has unpaid enrollment(s) in the TIMS file, that fall between the original MGIB Delimiting Date and Date of Decision, the COE letter should be edited only as directed above. Additional notification regarding the amended extension start date and payment for these periods are detailed in step #11.

9. After successful entry, proceed with authorization according to local procedures.

10. If the MGIB delimiting date prior to the extension was a past date, and the re-adjudication was not due to having a claim decided on or after August 15, 2018, (last action taken in claimant's file was **prior to** August 15, 2018*)* a period of non-payment exists.

- Flash the TIMS folder to indicate dates of "non-pay ability". (Any time between the MGIB delimiting date *prior to extension* and the *issuance of the new COE* is a non-payable period.)

- Authorizer will CORR and add a STOP to the message field of the MGIB BDN Master Record, indicating the non-payable period.

11. If enrollments are on file *and payable*, process using a separate supplemental End Product.

- If claimant has unpaid enrollment(s) in the TIMS file, that fall between the original MGIB Delimiting Date and Date of Decision: Process these enrollments in BDN and allow BDN award letter to release but DO NOT certify/release payments. **NOTE:** if debts were incorrectly created because of the RAD date manipulation (due to 120-month maximum extension) as detailed in #4 FLASH, an additional, separate work product may be needed to complete all required actions.

**PGIB Extensions:**

1. Ensure service data entered on the "Service Data" screen is accurate as of the processing date per VIS. This includes the addition of any qualifying active-duty period of 90 days or greater in length.

2. Evaluate for applicability of extension:

- The extension is only applicable to Veterans who gain additional PGIB entitlement because of Rudisill.

- This adjustment does not apply when no additional PGIB entitlement is granted or to records which do not have a delimiting date.

- If the extension is applicable, proceed to step 3.

3. Using the attached job aid, calculate the extended delimiting date.

- Ensure the delimiting date displayed in DGI after adjustment in step 1 is entered into the job aid. **Note:** The decision date (current date) may not match the date the COE is issued, as authorization may be delayed.

- Capture the completed job aid to the TIMS folder.

4. On the "Entitlement & Kickers" screen, enter the calculated date from step 3 into the "Chapter 33 Delimiting Date Override" field. Click Submit.

5. If retroactive/unpaid enrollment (after the original delimiting date) exists in TIMS or DGI (review TIMS because enrollments may have been removed from DGI) add payable periods to DGI.

6. On the "Work Product Summary" screen,

    - Select the "Allow Manual Letters Upload" option.

    - Download and edit the letter.

    - Immediately following the complete line "You have until … ", add the following text: "Your eligibility period has been extended and additional entitlement granted due to the Rudisill v. McDonough decision. (Authority of 38 USC 3031(i))

7. Save the edited letter as a PDF and follow local procedures for manual upload.

8. Proceed with authorization and manual letter upload according to local procedures.

9. If the PGIB delimiting date prior to the extension was a past date, and the re-adjudication was not due to having a claim decided on or after August 15, 2018, (last action taken in claimant's file was **prior to** August 15, 2018) a period of non-payment exists.

    - Flash the TIMS folder to indicate dates of "non-pay ability". (Any time between the PGIB delimiting date *prior to extension* and the *issuance of the new COE* is a non-payable period.)

    - Additionally, the authorizer is required to check the stop automation checkbox on the "Claimant Bio" screen and indicate the non-payable period.

10. If the Veteran is approved for Transfer of Entitlement (TOE) and has transferred entitlement to a spouse, the spouse is entitled to the same extension as the Veteran. TOE children are not entitled to a delimiting date extension under this authority.

    - Open a TOE Work Product for the spouse.

    - Repeat steps 4 through 8.

**Reminder:** End dates previously reported in VIS for all TOE dependents should be removed as part of routine processing. If previously reported end dates are present, they should be removed during this review. End dates not reported on VIS, i.e. end dates entered to facilitate dual source processing, should not be removed.

**Work Credit:** Follow local guidance.

# Rudisill Delimiting Date Extension Job Aid

CLEAR

## Chapter 30 (MGIB) Delimiting Date Calculator

### Required Entries

| | |
|---|---|
| Chapter 30 (MGIB) Delimiting Date | |

| | |
|---|---|
| Chapter 33 (PGIB) Election Date | |

| | |
|---|---|
| Date of Decision | |

| | |
|---|---|
| Is there a payable enrollment period **after** Chapter 30 (MGIB) Delimiting Date but **befor**e Date of Decision? | |

| | |
|---|---|
| If Yes, Input earliest date payable between MGIB DD & Date of Decision | |

### TOTAL TIME LOST CALCULATIONS

| | |
|---|---|
| Date of Decision | |
| Subtract Chapter 33 Election Date | |
| Subtract Active Duty Days | 0 |
| Add 90 days | 90 |
| TOTAL DAYS | |

### Active Duty Optional Entries

Only enter Qualifying active duty service of
90 or more continuous days between
1/0/1900          and          1/0/1900

| Excluded Active Duty Periods | | | |
|---|---|---|---|
| # | Begin Date | End Date | Total Days |
| 1 | | | 0 |
| 2 | | | 0 |
| 3 | | | 0 |
| 4 | | | 0 |
| 5 | | | 0 |
| 6 | | | 0 |
| 7 | | | 0 |
| 8 | | | 0 |
| 9 | | | 0 |
| 10 | | | 0 |

### Answer Key

| Less than (<) 120 month extension |
|---|
| #VALUE! |

| Greater than (>) or Equal to (=) 120 month extension |
|---|
| #VALUE! |

| Less than (<) 120 month DD | |
|---|---|
| Adjusted MGIB DD | #VALUE! |

| Greater than (>) or Equal to (=) 120 months DD | |
|---|---|
| Adjusted MGIB DD | #VALUE! |

| Less than (<) BDN 310 Screen Entry | |
|---|---|
| Months | #VALUE! |
| Days | #VALUE! |
| From Date | #VALUE! |

| Greater than (>) or Equal to (=) 120 months BDN 310 Entry | |
|---|---|
| Months | #VALUE! |
| Days | #VALUE! |
| From Date | #VALUE! |

Appx0048

## Job Aid Instructions

**Step 1:** Enter Chapter 30 (MGIB) Delimiting Date, Chapter 33 (PGIB) Election Date, and Date of Decision. Date format must be XX-XX-XXXX or XX/XX/XXXX.

**Step 2:** Enter qualifying active duty service periods of 90 or more continuous days between Chapter 33 (PGIB) Election Date and Chapter 30 (MGIB) Delimiting Date or Date of Decision (whichever is earlier). If the begin date or end date of the service period are outside the dates specified above, only enter dates from the period of service that fall between eligible dates. See "Active Duty Optional Entries".

**Step 3:** If there is an unpaid enrollment period **after** Chapter 30 (MGIB) Delimiting Date but **before** Date of Decision, enter "YES". Then enter the earliest date payable in the space following. If no unpaid enrollment exists, enter "NO".

**Step 4:** Adjust BDN 310 screen based on the month(s), day(s), and "From Date" listed under BDN 310 Screen Entry.

**Step 5:** If after entering the correct information into the Job Aid and into BDN, the Adjusted MGIB DD does not match up with BDN 310 Delimiting Date, see **Note 5**.

## Notes on Job Aid

**Note 1:** This Job Aid is to be used for Chapter 30 extensions when MGIB was relinquished and later revoked.

**Note 2:** Children are not eligible for a Delimiting Date extension. This Job Aid is only for Veterans and spouses.

**Note 3:** If claim was last worked before August 15, 2018, no payments can be made between the original Chapter 30 Delimiting Date and Date of Decision.

**Note 4:** Maxium amount of extension is 120 months. If extension is greater than 120 months, only enter 120 into BDN 310 screen.

**Note 5:** Due to BDN using a 360 day calender year, if the extension of months/days input into BDN 310 screen do not result in the job aid's adjusted delimiting date, use the delimiting date that populates in BDN.

# Rudisill Delimiting Date Extension Job Aid

**CLEAR**

## Chapter 33 (PGIB) Delimiting Date Calculator

### Required Entries

Chapter 33 (PGIB) Delimiting Date

Chapter 33 (PGIB) Election Date

Date of Decision

### Active Duty Optional Entries

Only enter Qualifying active duty service of 90 or more continuous days between

1/0/1900 and 1/0/1900

| # | Excluded Active Duty Periods | | |
|---|---|---|---|
| | Begin Date | End Date | Total Days |
| 1 | | | 0 |
| 2 | | | 0 |
| 3 | | | 0 |
| 4 | | | 0 |
| 5 | | | 0 |
| 6 | | | 0 |
| 7 | | | 0 |
| 8 | | | 0 |
| 9 | | | 0 |
| 10 | | | 0 |

### TOTAL TIME LOST CALCULATIONS

| | |
|---|---|
| Date of Decision | |
| Subtract Chapter 33 Election Date | |
| Subtract Active Duty Days | 0 |
| Add 90 days | 90 |
| TOTAL DAYS | 90 |

**Answer Key**

Less than (<) 180 month extension — #VALUE!

Greater than (>) or Equal to (=) 180 month extension — #VALUE!

<180 Months Adjusted PGIB DD — #VALUE!

> or = 180 months Adjusted PGIB DD — #VALUE!

**Appx0050**

## Job Aid Instructions

**Step 1:** Enter Chapter 33 (PGIB) Delimiting Date, Chapter 33 (PGIB) Election Date, and Date of Decision. Date format must be XX-XX-XXXX or XX/XX/XXXX.

**Step 2:** Enter qualifying active duty service periods of 90 or more continuous days between Chapter 33 (PGIB) Election Date and Chapter 33 (PGIB) Delimiting Date or Date of Decision (whichever is earlier). If the begin date or end date of the service period are outside the dates specified above, only enter dates from the period of service that fall between eligible dates. See "Active Duty Optional Entries".

**Step 3:** Adjust DGI under "Entitlement & Kickers" screen enter the adjusted PGIB Delimiting Date from Job Aid into "Chapter 33 Delimiting Date Override" field.

## Notes on Job Aid

**Note 1:** This Job Aid is to be used for Chapter 33 extensions when additional entitlement award due to Rudisill and PGIB Delimiting Date exists.

**Note 2:** Children are not eligible for Delimiting Date extensions. This Job Aid is only for Veterans and spouses.

**Note 3:** If claim was last worked before August 15, 2018, no payments can be made between the original Chapter 33 Delimiting Date and Date of Decision.

**Note 4:** Maxium amount of extension is 180 months. If extension is greater than 180 months, only extend by 180 months.

Appx0051

# QUICK GUIDE: MGIB Rudisill Delimiting Date Extension for 120 Month Maximum allowable

See SNIPPETS below for visual guidance when the length of Rudisill MGIB Del Date Ext exceeds the 120 month maximum:

**1) BDN MGIB 310 screen prior to Rudisill review and/or extension:**



**2) JOB AID: When the length of extension on the Job Aid is capped at 120 months** (even if the current delimiting date prior to extension is in the future) the final RAD date requires manipulation to reflect '10 years and 1 day prior to' the "From Date" entered in the "Delim Date Adj" section of the 310 screen (as reflected in the Job Aid)



3) **BDN MGIB 310 screen when the length of extension on the Job Aid is capped at 120 months *and* both periods of service were added.** BDN calculated 10 years from 6-24-20 *PLUS* 120 months (10 years) from 1-26-25 as input (per the Job Aid). **This is INCORRECT.**



4) **BDN MGIB 310 screen when the length of extension on the Job Aid is capped at 120 months** (even if the current delimiting date prior to extension is in the future) ***the final RAD date requires manipulation to reflect '10 years and 1 day prior to' the "From Date"*** entered in the "Delim Date Adj" section of the 310 screen (as reflected in the Job Aid)



**IMPORTANT POTENTIAL DEBT REMINDER:**

When the extension is capped at 120 months *the 312 screen must be carefully reviewed prior to authorization to ensure that no debts for prior enrollment are created because of this RAD change.* If debts are created, you must still add the 120 months and enter the "From Date" as instructed. However, DO NOT change the original RAD, instead allow BDN to calculate the extended delimiting date (even if it does not match the final JOB AID date) then FLASH the file as follows:

"Correct Delimiting Date is XX-XX-XXXX (as reflected in the Job Aid). DO NOT pay after this date. Suppress letters upon authorization. Manual Letters are required for all (current and future) awards with corrected delimiting date."

## INSTRUCTIONS FOR REMOVING BENEFIT RELINQUISHED IN DGI
(The following example is for removal of MGIB.  Follow the same steps for removal of MGIB-SR.)

REMINDER: VCE must manually reinput Chapter 33 Start Date in step #5 prior to authorization

1) Go to the Entitlement Used tab and check the box to the left of Chapter 30 (MGIB).



2) Once the box is checked go to the far right and choose "Delete".



3) Once complete the Entitlement Used, Benefit Relinquished, and Chapter 33 Start date will be blank.



4) Next, you must *reinput* ALL Chapter 30 entitlement used. But **DO NOT** check the 'Eligible' box.



5) **VCE must manually reinput Chapter 33 Start Date.** Once all actions are complete, the record should correctly update as seen below; Chapter 30 used is now correctly reflected in DGI as shown below.



**INSTRUCTIONS FOR REMOVING BENEFIT RELINQUISHED IN DGI <span style="color:red">WHEN MGIB REFUND ALREADY PAID</span>**
(This example is for removal of MGIB Relinquishment *when MGIB Refund has already been paid.*)

If these steps are not followed the following Validation error banner will appear:



**REMINDER: VCE must manually reinput Chapter 33 Start Date in step #7 prior to authorization**

1)  Go to WPS screen. Under Miscellaneous Benefits, choose Correction to the Refund of Chapter 30 contributions. When Add/Edit Miscellaneous Benefits box appears DO NOT change information listed, but you must select SAVE. (i.e. as shown below $1200.00 would be unchanged).



2)  After SAVE has been selected, under Miscellaneous Benefits check the box to the left of the Refund of Chapter 30 Contributions entry. Then select Delete Benefit.



3)  Go to the Entitlement Used tab and check the box to the left of Chapter 30 (MGIB).



4) Once the box is checked go to the far right and choose "Delete".



5) Once complete the Entitlement Used, Benefit Relinquished, and Chapter 33 Start date will be blank.



6) Next, you must *reinput* ALL Chapter 30 entitlement used. But **DO NOT** check the 'Eligible' box.



7) VCE must manually reinput Chapter 33 Start Date. Once all actions are complete, the record should correctly update as seen below; Chapter 30 used is now correctly reflected in DGI as shown below.



8) Once the benefit has been reentered, go to WPS screen under Lump Sum Payments. There will be a 71B debt for the amount of CH30 Contributions refunded.



**Lump Sum Payments**

| Type of Payment | Cost Code | Code/Class | Term Begin Date | Term End Date | Facility Code | Payment Amount | CH30 Kickers | CH1606 Kickers | Payment Action | Maturation |
|---|---|---|---|---|---|---|---|---|---|---|
| CH30 Contributions Refund | 3N2A | 71B | 01/01/2025 | 01/01/2025 | --- | ($1,200.00) | | | Send now | 01/08/2025 |

9) Also, on the WPS screen, the Refunded of CH30 Contributions Status will show Deleted.



**Miscellaneous Benefits**

| Date | Type | Description | Amount Claimed | Status |
|---|---|---|---|---|
| 01/08/2025 | Refund of CH30 Contributions | CH30 Contributions Refund | $1,200.00 | Deleted |

10) On the final step, make sure to select **Authorize with No Payments.** Do not choose Authorize with Automatic Payments because debts will be created.



**Payments and Authorization**

Date Last Paid 08/21/2015
Debt Collection Indicator 1

Verification Date 12/11/2024
MHA/Kicker Paid Through Date 12/11/2024
Service Information Verified Through Date 09/30/2024

○ Authorize and Pay Automatically
◉ Authorize with No Payments

Submit

AUTHORIZE WITH AUTOMATIC PAYMENTS

A recent decision made by the United States Supreme Court has changed VA's interpretation of Section 3327 (h) of Title 38, United States Code. The new interpretation allows beneficiaries more flexibility in the use of their VA Education benefit programs when entitled to more than one benefit, or when they are eligible to make a choice between the use of two or more benefits.

*NOTE: Individual education benefit programs include 36 months of entitlement. Generally, beneficiaries who qualify for multiple VA Education benefits are subject to a cap of 48 months of entitlement paid under any combination of benefit programs.*

We have performed a review of your claim to determine how the changes may apply to you. This letter provides information about what we did on your claim, your options for coordinating your benefits, and how to contact us.

## What Our Records Show

You elected to relinquish your benefits under the Montgomery GI Bill - Selected Reserve (MGIB-SR) to establish eligibility under the Post-9/11 GI Bill (PGIB). Based on your service records, this election was not required to establish eligibility under PGIB. Revoking your election would restore your eligibility to benefits under MGIB-SR.

*NOTE: Your service branch determines MGIB-SR eligibility, not VA. If you leave the Selected Reserve/Guard, your eligibility under MGIB-SR may end.*

## What We Did

We have reversed your election under MGIB-SR and restored your eligibility to benefits under MGIB-SR. VA will issue a separate Certificate of Eligibility (COE) letter with additional information regarding your MGIB-SR eligibility.

## What You Should Do

If you disagree with this decision and wish to relinquish MGIB-SR for PGIB, you may notify VA online through Ask VA at https://ask.va.gov or mail your request to the address at the top of this letter.

## Your Right to Seek Additional Review

If you disagree with our decision, you have one year from the date of this letter to request an additional review. For more information, please see the enclosed VA Form 20-0998, Your Rights to Seek Further Review of Our Decision. It explains your options for an additional review. You may also learn more about the appeal process at https://www.va.gov/decision-reviews/.

A recent decision made by the United States Supreme Court has changed VA's interpretation of Section 3327 (h) of Title 38, United States Code. The new interpretation allows beneficiaries more flexibility in the use of their VA Education benefit programs when entitled to more than one benefit, or when they are eligible to make a choice between the use of two or more benefits.

***NOTE**: Individual education benefit programs include 36 months of entitlement. Generally, beneficiaries who qualify for multiple VA Education benefits are subject to a cap of 48 months of entitlement paid under any combination of benefit programs.*

We have performed a review of your claim to determine how the changes may apply to you. This letter provides information about what we did on your claim, your options for coordinating your benefits, and how to contact us.

## What Our Records Show

Our records show you elected to relinquish eligibility under Montgomery GI Bill Selected Reserve (MGIB-SR) to receive benefits under Post-9/11 GI Bill (PGIB). Revoking this election could potentially restore eligibility under MGIB-SR.

***NOTE:** Your service branch determines MGIB-SR eligibility, not VA. If you leave the Selected Reserve/Guard, your eligibility under MGIB-SR may end.*

## What We Did

We have retained your election under MGIB-SR.  Reasons for retaining an election generally fall under three categories:

- Election was not required to establish eligibility under PGIB but was required to allow payment of the MGIB-SR kicker under PGIB. If you revoke your MGIB-SR election, you will not be required to repay the MGIB-SR kicker paid under PGIB, but you will no longer receive MGIB-SR kicker payments under PGIB.

- Election to relinquish Montgomery GI Bill (MGIB) was required to establish eligibility under PGIB but the election does not limit original PGIB entitlement to the amount remaining under MGIB and allows the highest possible benefit level payable under PGIB. If you revoke your MGIB-SR election, you will be required to relinquish MGIB which could negatively affect your PGIB benefits and cause debts.

- Election was not required to establish eligibility under PGIB, but service records indicate no current eligibility under MGIB-SR and revoking the election would not result in any additional benefits under any benefit program.

## What You Should Do

If you disagree and wish to revoke your election, you may notify VA online through Ask VA at https://ask.va.gov or mail your request to the address at the top of this letter.

## Your Right to Seek Additional Review

If you disagree with our decision, you have one year from the date of this letter to request an additional review. For more information, please see the enclosed VA Form 20-0998, Your Rights to Seek Further Review of Our Decision. It explains your options for an additional review. You may also learn more about the appeal process at https://www.va.gov/decision-reviews/.

A recent decision made by the United States Supreme Court has changed VA's interpretation of Section 3327(h) of Title 38, United States Code. The new interpretation allows beneficiaries more flexibility in the use of their VA Education benefit programs when entitled to more than one benefit, or when they are eligible to make a choice between the use of two or more benefits.

We have performed a review of your claim to determine how the changes may apply to you. This letter provides information about what we did on your claim, your options for coordinating your benefits, and how to contact us.

## Regarding Your Election

Our records indicate that you only have one period of qualifying active-duty service at this time. That service began before August 1, 2011, and you used some of your Montgomery GI Bill Active Duty (MGIB) benefits before you applied for the Post-9/11 GI Bill (PGIB).

You chose to give up MGIB to receive benefits under PGIB. However, this election limited your PGIB benefits to the amount of entitlement you had remaining under MGIB.

Because you only have one period of service, the new interpretation does not apply to your situation. You are _required_ to give up your MGIB benefits to establish your PGIB benefits.

## What We Did

We have <u>retained</u> your election to give up MGIB. You do not need to take any further action.

## Your Right to Seek Additional Review

If you disagree with our decision, you have one year from the date of this letter to request an additional review. For more information, please see the enclosed VA Form 20-0998, Your Rights to Seek Further Review of Our Decision. It explains your options for an additional review. You may also learn more about the appeal process at https://www.va.gov/decision-reviews/.

A recent decision made by the United States Supreme Court has changed VA's interpretation of Section 3327 (h) of Title 38, United States Code. The new interpretation allows beneficiaries more flexibility in the use of their VA Education benefit programs when entitled to more than one benefit, or when they are eligible to make a choice between the use of two or more benefits.

***NOTE****: Individual education benefit programs include 36 months of entitlement. Generally, beneficiaries who qualify for multiple VA Education benefits are subject to a cap of 48 months of entitlement paid under any combination of benefit programs.*

We have performed a review of your claim to determine how the changes may apply to you. This letter provides information about what we did on your claim, your options for coordinating your benefits, and how to contact us.

## How Benefits Could be Impacted

### Multiple Periods of Qualifying Service

Individual periods of service may be used to establish eligibility under both the Montgomery GI Bill - Active Duty (MGIB) and Post-9/11 GI Bill (PGIB). However, a single period of service beginning on or after August 1, 2011, cannot be used to establish benefits and could be a bar to benefits under one program or it could lower the benefit level payable under PGIB. If a period of service is used for one benefit, it will be excluded from consideration when considering eligibility under the other benefit.

### One Period of Qualifying Service Beginning before August 1, 2011

If service began before August 1, 2011, and MGIB benefits were not used before applying for PGIB, an election to relinquish MGIB is not necessary to establish eligibility under PGIB. However, additional periods of service must be completed to establish eligibility under multiple benefits. Eligibility to multiple benefits could be established through a reenlistment or Selected Reserve/Guard call-up or mobilization.

### One Period of Qualifying Service Beginning on/After August 1, 2011

If service began on or after August 1, 2011, an election to relinquish MGIB is not necessary to establish eligibility under PGIB. However, additional periods of service must be completed to establish eligibility under multiple benefits. Eligibility to multiple benefits could be established through a reenlistment or Selected Reserve/Guard call-up or mobilization.

## What Our Records Show

Our records show you elected to relinquish eligibility under MGIB to receive benefits under PGIB.

## What We Did

We have reversed your election under MGIB. When a beneficiary elects to give up eligibility under MGIB, the reason for reversing an election generally falls under one of the four categories below:

- **MGIB Extension Granted.** Election was not required to establish eligibility under PGIB. As a result, the election under MGIB is revoked and eligibility under MGIB is restored. VA will issue a separate Certificate of Eligibility (COE) letter detailing restored entitlement and new delimiting date under MGIB.

- **MGIB Extension Granted/MGIB Refund Previously Paid.** Election was not required to establish eligibility under PGIB. As a result, the election under MGIB is revoked and eligibility under MGIB is restored. VA will issue a separate Certificate of Eligibility (COE) letter detailing restored entitlement and new delimiting date under MGIB.

  ***NOTE***: *An MGIB election is required to receive a refund of MGIB contributions when PGIB is exhausted. In cases where the refund was processed prior to this decision, debts will not be established for the amount paid.*

- **MGIB Extension Granted/No Refund Paid.** Election was not required to establish eligibility under PGIB. As a result, the election under MGIB is revoked and eligibility under MGIB is restored. VA will issue a separate Certificate of Eligibility (COE) letter detailing restored entitlement and new delimiting date under MGIB.

  ***NOTE***: *If you fall under this category and wish to receive a refund of your MGIB contribution (up to $1200) when your PGIB entitlement exhausts, see the election option under **What You Should Do** below.*

- **Not Eligible MGIB.** No eligibility under MGIB and election was not required to establish eligibility under PGIB. As a result, the election under MGIB is revoked.


## What You Should Do

If you disagree with this decision and wish to relinquish MGIB for PGIB, you may notify VA online through Ask VA at https://ask.va.gov or mail your request to the address at the top of this letter.

**Option for MGIB Refund in Lieu of Restored Entitlement [ONLY]**

If you wish to receive a refund of your MGIB contribution (up to $1200) when your PGIB entitlement exhausts rather than use restored entitlement under MGIB, you must submit a signed request online through **Ask VA** at https://ask.va.gov or mail to the address at the top of this letter.

Please use the following to submit for this option:

_____
**[Initials]**

I choose to receive a proportional refund of my MGIB contributions (up to $1200) when I exhaust my entitlement under PGIB. I understand that by choosing to receive a proportional refund of my MGIB contributions I am forfeiting my eligibility to use benefits (restored entitlement) under MGIB.

_____     _____
Printed Name                                              Signature

## Your Right to Seek Additional Review

If you disagree with our decision, you have one year from the date of this letter to request an additional review. For more information, please see the enclosed VA Form 20-0998, Your Rights to Seek Further Review of Our Decision. It explains your options for an additional review. You may also learn more about the appeal process at https://www.va.gov/decision-reviews/.

A recent decision made by the United States Supreme Court has changed VA's interpretation of Section 3327 (h) of Title 38, United States Code. The new interpretation allows beneficiaries more flexibility in the use of their VA Education benefit programs when entitled to more than one benefit, or when they are eligible to make a choice between the use of two or more benefits.

***NOTE***: *Individual education benefit programs include 36 months of entitlement. Generally, beneficiaries who qualify for multiple VA Education benefits are subject to a cap of 48 months of entitlement paid under any combination of benefit programs.*

We have performed a review of your claim to determine how the changes may apply to you. This letter provides information about what we did on your claim, your options for coordinating your benefits, and how to contact us.

## How Benefits Could be Impacted

### Multiple Periods of Qualifying Service

Individual periods of service may be used to establish eligibility under both the Montgomery GI Bill - Active Duty (MGIB) and Post-9/11 GI Bill (PGIB). However, a single period of service beginning on or after August 1, 2011, cannot be used to establish benefits and could be a bar to benefits under one program or it could lower the benefit level payable under PGIB. If a period of service is used for one benefit, it will be excluded from consideration when considering eligibility under the other benefit.

### One Period of Qualifying Service Beginning before August 1, 2011

If service began before August 1, 2011, and MGIB benefits were not used before applying for PGIB, an election to relinquish MGIB is not necessary to establish eligibility under PGIB. However, additional periods of service must be completed to establish eligibility under multiple benefits. Eligibility to multiple benefits could be established through a reenlistment or Selected Reserve/Guard call-up or mobilization.

### One Period of Qualifying Service Beginning on/After August 1, 2011

If service began on or after August 1, 2011, an election to relinquish MGIB is not necessary to establish eligibility under PGIB. However, additional periods of service must be completed to establish eligibility under multiple benefits. Eligibility to multiple benefits could be established through a reenlistment or Selected Reserve/Guard call-up or mobilization.

## What Our Records Show

Our records show you elected to relinquish eligibility under MGIB to receive benefits under PGIB.

## What We Did

We have retained your election under MGIB.  Reasons for retaining an election generally fall under three categories:

- **Potential Overpayment.** Paid under PGIB at a higher benefit level because MGIB was relinquished, and all qualifying service was applied to PGIB. However, if the election is revoked and additional service is used to establish eligibility under MGIB, previous payments for training under PGIB would be reduced and overpayments would then be established for the difference in payable rates.

- **Reduction in Benefit Level.** Paid under PGIB at a higher benefit level because MGIB was relinquished, and all qualifying service was applied to PGIB. However, if the election is revoked and additional service is used to establish eligibility under MGIB, the benefit level under PGIB would be reduced but no overpayment would result.

- **MGIB Kicker.**  Election was not required to establish eligibility under PGIB but was required to allow payment of the MGIB kicker under PGIB.  If the election is revoked, collection of the MGIB-SR kicker paid under PGIB would not be required but it will no longer be paid under PGIB.

## What You Should Do

If you disagree and wish to revoke your election, you may notify VA online through Ask VA at https://ask.va.gov or mail your request to the address at the top of this letter.

## Your Right to Seek Additional Review

If you disagree with our decision, you have one year from the date of this letter to request an additional review. For more information, please see the enclosed VA Form 20-0998, Your Rights to Seek Further Review of Our Decision. It explains your options for an additional review. You may also learn more about the appeal process at https://www.va.gov/decision-reviews/.

# Certificate of Compliance

1.      This document complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because this document contains 12,244 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32.

2.      This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft® Office Word 2016 in 14-Point Equity A font.

Date:     March 5, 2026            /s/ Luke A. Schamel
                                                   Luke A. Schamel

## Certificate of Service

I hereby certify that I served a copy of the Petitioner's Principal Brief with the Clerk of the United States Court of Appeals for the Federal Circuit via the CM/ECF system, on the 5th day of March, 2026, which will send an electronic copy and notice all counsel of record registered as CM/ECF users in this matter.

/s/ Luke A. Schamel
Luke A. Schamel